DENISON F. HOLMES

v.

EMILY I. HOLMES

1. MEASURE OF DAMAGES *in actions for slander—and herein, of exemplary damages.* In an action for verbal slander it is erroneous for the court to instruct the jury "that malicious slander is an *infamous offense,* for which the law allows exemplary damages to be given." Such a mode of aggravating vindictive damages, by investing the act with which the defendant is charged and for which the suit is brought, with a degree of turpitude and enormity which the law neither attaches nor recognizes as belonging to it, is not to be countenanced.

2. SAME—*former decision.* There was no point involved in the case of *McClurkin* v. *Ewing,* 42 Ill. 283, calling for an elementary definition of verbal slander, and that given by the court is not supported by the authorities, and the language used· in the opinion which characterized the offense as infamous, must be regarded as used through inadvertence, and as constituting a mere *obiter dictum.*

3. In assessing the damages in such an action, any circumstances of aggravation or in mitigation of the offense should be taken into consideration.

4. Nor should the damages be assessed *merely* according to the defendant's ability to pay; for whether the payment of the amount due to the plaintiff as compensation for the injury will or will not be convenient to the defendant, does not at all affect the question as to the extent of the injury done, which is the only question to be determined. The jury are to inquire not what the defendant can pay, but what the plaintiff ought to receive.

5. INSTRUCTIONS should not assume facts to be proven, which are in dispute.

APPEAL from the Circuit Court of Whiteside county; the Hon. W. W. HEATON, Judge, presiding.

Messrs. AMOUR & SHAW, and Mr. J. H. KNOWLTON, for the appellant.

Mr. C. B. SMITH, for the appellee.

Mr. JUSTICE MCALLISTER delivered the opinion of the Court:

This was an action for slander, brought by appellee, in the Carroll circuit court, against appellant, for speaking words which, if spoken as alleged in the declaration, amount to a charge that appellee had been guilty of adultery and fornication.

There was a change of venue to the Whiteside circuit court, where the cause was tried upon the plea of not guilty, appellant found guilty, and appellee's damages assessed at $3000. The court, overruling appellant's motion for a new trial, gave judgment upon the verdict, and the case is brought here by appeal.

It appears from the record, in which all the evidence is preserved, that there was a fair conflict of evidence in respect to the fact of the speaking of the actionable words, or any of them, as alleged; and it appears from all the evidence that whatever words were spoken, were uttered only upon one occasion, and in the heat of passion, which the evidence strongly tends to show was provoked by the misbehavior of appellee and her mother, who was present, and in concert with whom appellee was acting.

. Upon this state of the case and the facts in evidence, the court, at the instance of appellee's counsel, gave to the jury the following instruction :

"That malicious slander is an *infamous offense*, for which the law allows exemplary damages to be given; and if the jury find the defendant guilty, they may assess the plaintiff's damages at any sum not exceeding $10,000; and in arriving at the amount of damages, the jury may take into consideration the pecuniary circumstances of the defendant as well as the character of the plaintiff, *which has been attacked.*"

The term "infamous," when used in characterizing offenses or crimes, is, in law, descriptive of that class of heinous

crimes whose perpetrators were, on conviction, held by the common law to be incompetent witnesses, on the ground that men generally are not found to commit them, unless when so depraved as to be unworthy of credit for truth. The usual enumeration of them was treason, felony and the *crimen falsi* —the latter term including perjury and forgery.

It is needless to say that verbal slander, which is not indictable in this country, can not be considered as belonging to any such class.

Blackstone, after defining ordinary slander, says: "Words spoken in derogation of a peer, a judge or other great officer of the realm, which are called *scandalum magnatum*, are held to be still more heinous; and though they be such as would not be actionable in the case of a common person, yet when spoken in disgrace of such high and respectable characters, they amount to *an atrocious injury*, which is redressed by an action on the case, etc., as well on behalf of the crown, to inflict the punishment of imprisonment on the slanderer, as on behalf of the party to recover damages for the injury sustained." Black. Com. book 3, chap. 8, p 123.

Thus it appears that even this exceptional kind of slander, which was punishable on behalf of the crown, which was never recognized in this country, and has become obsolete in England, was characterized by a degree of enormity amounting to an *atrocious injury*, but was never classed among the infamous crimes.

The language employed in *McClurkin* v. *Ewing*, 42 Ill. 283, would seem to countenance that of the instruction under consideration. It is apparent that no point was there involved calling for an elementary definition of verbal slander. That given is not supported by the authorities, and the language used in the opinion must be regarded as employed through inadvertence, and as constituting a mere *obiter dictum*.

It is apparent, therefore, that the court, by the instruction in question, invested the act with which the defendant was charged, and for which suit was brought, with a degree of

turpitude and enormity which the law neither attaches nor recognizes as belonging to it; and then declares that for it—for this "infamous offense"—the law allows exemplary damages.

Is such a mode of aggravating vindictive damages to be countenanced? Suppose the action to be trespass, for taking personal property, and it should appear that the act was a mere trespass, but willful. The jury might in such case, under the rulings of this court, give vindictive damages. But suppose to aggravate such damages the court should instruct the jury that willful trespass was an infamous crime, relative to property, for which the law allows vindictive damages, would such an instruction be approved? Certainly not. The reason is obvious. It invests the act, which was the basis of a civil action only, with qualities of enormity and turpitude that the law does not recognize, for which the jury are told they may allow vindictive damages, the plain and natural effect of which would be to raise the measure of such damages to a false standard.

The principle of the rule allowing exemplary, vindictive or punitory damages, as they are called, has been severely questioned by many very able jurists, among whom was Professor Greenleaf, upon whose sturdy, accurate, profound intellect and wonderful legal attainments, it is unnecessary to pass any encomiums. In his definition of damages, and upon which it would be difficult to improve, there is little countenance to the doctrine of punitory damages. He says: "Damages are given as a compensation, recompense or satisfaction to the plaintiff, for an injury actually received by him from the defendant. They should be precisely commensurate with the injury, neither more nor less." 2 Greenlf. Ev. sec. 253, and note 2.

The principal grounds upon which the doctrine of exemplary damages has been assailed, is that it is a false theory, and inconsistent with the nature of the proceeding, to mix the supposed interests of society with those of an individual in

the pursuit of purely private redress for a private injury, and is subject to great abuses, which, in most cases, the courts can correct only by the exercise of the delicate power of setting aside verdicts as corrupt, partial and passionate. The doctrine of exemplary, vindictive or punitory damages is, however, too firmly rooted in our jurisprudence to be disturbed. But, while still recognizing the doctrine within its proper scope, the arguments which may be urged with great, if not unanswerable, force against it, ought to be influential in begetting a high degree of watchfulness on the part of courts to prevent it from being perverted—from being extended beyond the real principle upon which it is said to be based, by allowing plaintiffs, through the instrumentality of instructions to the jury, to characterize the acts of the defendant with degrees of enormity and turpitude which the law does not affix to them, demand punishment for fictitious offenses, and thereby put money in their own pockets, under the guise of protecting society. Such was the obvious purpose and natural prejudicial effect of the instruction in question, and it was for that reason erroneous.

The instruction was likewise bad upon other grounds. Besides denouncing slander as an infamous offense, for which the law allowed the jury to give exemplary damages if they found defendant guilty, excluding consideration of any circumstances of aggravation or mitigation, it directs their attention to the sole facts of defendant's pecuniary ability and plaintiff's character, which the instruction assumes had been attacked. Thus it was virtually an instruction to find the defendant guilty—allow plaintiff exemplary damages in any sum not exceeding $10,000, according to defendant's ability to pay. What else could it be? The jury were told that plaintiff's character had been attacked. This, under the circumstances, would be understood by them to mean by defendant speaking the slanderous words. How otherwise could it be attacked? That fact, which was in dispute by the evidence,

having been found by the court for them, then the only consideration submitted was defendant's ability to pay.

Greenleaf's Evidence, 2 vol. sec. 269, says: "Nor are damages· to be assessed *merely* according to the defendant's ability to pay; for whether the payment of the amount due to the plaintiff, as compensation for the injury, will or will not be convenient to the defendant, does not at all affect the question as to the extent of the injury done, which is the only question to be determined. The jury are to inquire not what the defendant can pay, but what the plaintiff ought to receive;" and see cases cited in note 1.

For the error in giving the instruction referred to, the judgment must be reversed and the cause remanded.

*Judgment reversed.*