## ISAAC VAN TUYL

### v.

## LEWIS RINER ET AL.

1. SLANDER OF TITLE.—An action of slander of title may be sustained where the slander is false and malicious, and where special damage results from speaking the slanderous words, such as preventing the sale or leasing of the land. And where the action is against one interested in the title, if the motive for speaking the words be not reasonable self-protection, but malice, without probable cause, there may be a recovery.

2. PUNITIVE DAMAGES.—In actions of this nature there may be evidence of such a wanton, willful and malicious attempt to injure the owner of the land, as will justify the finding of exemplary or punitive damages, but the present case is not one, from the evidence, calling for anything more than compensatory damages.

APPEAL from the Circuit Court of Warren county; the Hon. GEO. W. PLEASANTS, Judge, presiding. Opinion filed May 2, 1879.

Messrs. STEWART, PHELPS & GRIER, for appellant; that the burden of proving malice is upon the plaintiff, cited Wright v. Woodgate, 2 Cr. M. & R. 573; Cockayne v. Hodgkisson, 5 Car. & P. 543; Pitt v. Donovan, 1 Maule, & S. 639.

Proof must be made of damage actually sustained: Starkie

Van Tuyl v. Riner et al.

on Slander, 192; Townshend on Slander, 309; Kendall v. Stone, 1 Seld. 14; Bailey v. Dean, 5 Barb. 297.

The damages are excessive: Pitt v. Donovan, 1 Maule & S. 639; Elborow v. Allen, 3 Cro. Jac.; Law v. Harwood, 4 Cro. Car.; Gerrard v. Dickenson, Cro. Eliz. 197; Am. Lead. Cas. 105.

Instructions should state the law correctly, and each instruction should be correct in itself: Grube v. Nichols, 36 Ill. 92; C. B. & Q. R. R. Co. v. Payne, 49 Ill. 499; C. & A. R. R. Co. v. Murray, 62 Ill. 326; Baldwin v. Killian, 63 Ill. 550.

Vindictive damages should not be allowed: 2 Greenleaf on Ev. § 253; Chicago v. Martin, 49 Ill. 241.

Messrs. KIRKPATRICK & HANNA, for appellees; upon the question of privileged communications, cited White v. Nichols, 3 How. 266.

Falsehood and the want of probable cause will amount to proof of malice: White v. Nichols, 3 How. 266; Pitt v. Donovan, 1 Maule & S. 639; Gerard v. Dickenson, 4 Rep. 18; Cockayne v. Hodgkisson, 5 C. & P. 543; Like v. McKinstry, 41 Barb. 186; Townshend on Slander, § 206; Addison on Torts, § 1137; Chapman v. Cawrey, 50 Ill. 512; 1 Am. Lead. Cas. 128.

Re-assertion of the charges, by pleas, with no attempt to prove their truth, is evidence of malice: Beasly v. Meigs, 16 Ill. 139; Spencer v. McMasters, 16 Ill. 405.

Justification must be co-extensive with the slander: Sanford v. Gaddis, 13 Ill. 329; Darling v. Barks, 14 Ill. 46.

If claiming to act under advice of counsel, defendant must show that he fully and fairly stated to counsel all the facts: Ross v. Innis, 35 Ill. 487; Anderson v. Friend, 71 Ill. 475.

Acting under advice of counsel is no shield, but a circumstance to be considered in determining the question of malice: Townshend on Slander, § 206; Like v. McKinstry, 41 Barb. 189; Jasper v. Purnell, 67 Ill. 358.

Upon the question of damages: Starkie on Slander, 192; Kendall v. Stone, 5 N. Y. 14; Townshend on Slander, § 206; Stark v. Chetwood, 5 Kan. 141; Paull v. Halferty, 63 Pa. St. 46.

The verdict will not be set aside for excessive damages unless they are so great as to lead to the belief that the jury were misled by passion or prejudice: Schlencker v. Risley, 3 Scam. 483; McNamara v. King, 2 Gilm. 432; Ross v. Innis, 35 Ill. 487; Ill. Cent. R. R. Co. v. Simmons, 38 Ill. 242; Drohn v. Brewer, 77 Ill. 280; Spencer v. McMasters, 16 Ill. 405; Kendall v. Stone, 2 Sandf. 269.

Courts will not reverse for trivial errors: Smith v. Binder, 75 Ill. 492; Nichols v. Mercer, 44 Ill. 250; Rice v. Brown, 77 Ill. 549; Sterling Bridge Co. v. Baker, 75 Ill. 139; Stowell v. Beagle, 79 Ill. 525; T. P. & W. R. R. Co. v. Ingraham, 77 Ill. 309; Durham v. Goodwin, 54 Ill. 469; Town of Vinegar Hill v. Busson, 42 Ill. 45; N. L. Packet Co. v. Binninger, 70 Ill. 571; Walker v. Collier, 37 Ill. 362; Murphy v. The People, 37 Ill. 447.

Upon the question of a right to exemplary damages: Roth v. Smith, 54 Ill. 431; Donnelly v. Harris, 41 Ill. 126; Kendall v. Stone, 2 Sandf. 269; Sedgwick on Damages, 454; Field on Damages, § 25; Grabb v. Margrave, 3 Scam. 372; I. & St. L. R. R. Co. v. Cobb, 68 Ill. 53; Dobbins v. Duguid, 65 Ill. 464; Stillwell v. Barnett, 60 Ill. 210; C. & I. R. R. Co. v. Baker, 73 Ill. 316; Cutler v. Smith, 57 Ill. 252; Farwell v. Warren, 51 Ill. 467; Smalley v. Smalley, 81 Ill. 70; Becker v. Dupree, 75 Ill. 167; Johnson v. Camp, 51 Ill. 219; Best v. Allen, 30 Ill. 30; Ously v. Hardin, 23 Ill. 403; Bull v. Griswold, 19 Ill. 631; Sherman v. Dutch, 16 Ill. 283; Oard v. Oard, 59 Ill. 46.

LELAND, J. This was an action brought by appellees against appellant for slandering the title to eighty acres of land of appellees, situated in Warren county.

Actions of this kind have rarely if ever been brought in this State, perhaps because a great deal of latitude of discussion of such subjects has been practiced and tolerated.

Without doubt, however, such an action may be sustained, where the slander is false and malicious, and where special damage results from speaking the slanderous words, such as preventing the selling or leasing the land, etc., usually,

however, against a stranger, who has no interest in the title, because of the difficulty of making out a merely malicious motive in one who has an interest to protect by discussion of the question of title. If the motive, however, be not reasonable self-protection, but malice, without probable cause for speaking the words, there might be a recovery against one interested in the title.

Mrs. Lewis Riner and Mrs. Isaac Van Tuyl were sisters. Their father, Asher Davis, who was eighty-one years old in August, 1878, had in February, 1873, conveyed the alleged slandered land to Mr. and Mrs. Riner, and they had executed a contract to support Davis and his wife, who were both old and feeble, during their lives, and to bury them when dead, and this contract was the consideration for the deed.

It also appeared, however, that Davis had three daughters and three eighty-acre tracts of land; two of the daughters in this State and one in Ohio, and two of the tracts of land in Iowa, and one in this State. He conveyed one of the Iowa tracts to the Ohio daughter, Mrs Bell; the other, at the request of Mrs. Van Tuyl, to her son by a former husband, Asher D. Shauman, and the Illinois tract, which was the most valuable, to Mr. and Mrs. Riner, and they were to support and bury the old gentleman and his wife, as before stated.

This too often resorted to contrivance to save trouble, as is usual, made more instead of less, and among others came this unpleasant family law-suit.

Riner and wife desired to sell the land and go to Kansas, and the old gentleman, whose testimony does not seem to indicate any weakness of intellect, said: " I am alone. My wife is dead, and I am satisfied that I am just as near heaven in Kansas as I am here, and it don't make any difference where this old body lies when I am dead. Sell out and go, and I will go with you." And thereupon, with the full consent of Davis, Riner and wife, in April or May, 1877, entered into negotiation with Peter Staley, and a verbal offer was made by the latter to pay $3,800 cash on Sept. 1st, 1877, or $1,800 then, and $2,000 March 1st, next, with interest at ten per cent. On September 1st a deed was tendered, and Staley declined to take it and

pay the money, as he says, because Van Tuyl told him in August that his wife was legal heir to that piece of land; also Mrs. Bell of Ohio was another heir, and that if he bought he would buy a law-suit; that Mr. Davis was not capable of doing business; that Mr. Davis had not been capable of doing busi- for a good many years; said he supposed Riner had a deed, but if he had a deed, had just got it from Mr. Davis some way, and he could go in and talk to Davis and he would make him a deed in some way; said old man was not at himself, and had not been for a great many years; was not capable of doing business. Asked him if he would swear Davis wasn't at himself. Said he would, and his wife would, and Isaac Shauman and his wife would, and he could get a hundred witnesses in this State and Ohio that would swear the old man not capable of doing busi- ness; said he was fearful if Riner and wife sold the land, the old man would be thrown on public charity; said he heard they were some in debt, and was afraid if they went off and spent what they had, old gentleman might come back on him to keep. Said if Riner sold out and went west would probably spend all of it, and was good deal in debt, and old man would come on him for support. Said for his part he would not move, but said his wife would not give him rest day or night, till he came to see me. Said one reason why he did not want me to buy was, that Riner might spend what he had got from the old man, and the old man would be deprived of his support, and would have to come on him. Shauman told me old man had right to support off that land. May have told me he would see the old man had his rights. Shauman did a good deal of talk- ing. Might have said that, can't tell; can't recollect that he said that. Think he said something about the old man's support.

I proposed to take the land at same price if they would make deed good. Told Van Tuyl I would have nothing to do with it unless he and Riner would settle the thing up. Expect I would have taken it if he (Riner) had made me good deed. He said it could not be settled up, I believe. This and other evidence as to the speaking the words in the declaration, and also evi- dence as to the extent of the damage to the plaintiff because of the failure to sell to Staley, and on the subject of the defendants'

motives being malicious, and of his intent being to enable his son-in-law and himself to sell an eighty-acre tract to Staley, as they did do, instead of plaintiff's doing so, and to enable his wife to share in the land as heir, etc., constituted plaintiff's case.

There was evidence on the part of the defense tending to show that the motives for speaking the words were not malicious, but honest and without malice, and that the damage, if any, by reason of not completing the sale to Staley, was trifling. The jury found for plaintiffs, and their verdict was as follows:

" We, the jury, find the issue for the plaintiffs, and assess the damages on the land at one thousand dollars, and exemplary damages at five hundred dollars; total, fifteen hundred dollars." As to such a verdict being proper, see Sedgwick on the Measure of Damages, p. 573, note, and p. 744, note, top paging, 6th Ed. The court, however, considering the verdict informal, caused it to be put in the following form: " We, the jury, find the issue in favor of plaintiffs, and assess the damages at fifteen hundred dollars." We are not disposed to say that upon the evidence there ought not to have been a verdict in this case for the plaintiffs, nor would we be inclined to disturb it if it had been for the defendant.

As to whether defendant and his wife honestly feared that if the land was once converted into money, the latter " might take unto itself wings and fly away," and the old father be made to suffer because of the inability of Riner and wife to take care of him, or whether this interference with the sale was from selfish, dishonest and malicious motives, was a question for the jury to determine.

Although in the verdict as reduced to form, the compensatory and punitive damages were merged and consolidated in the one actually rendered by the jury, they were as we have seen, separated. The one thousand dollars compensatory damages, for preventing this sale to Staley, seems to us unreasonably large. We think that the advantage which appellees had obtained over Staley, in their trade with him, has been overestimated, and that the injurious consequences of a statement, the accuracy or inaccuracy of which could readily be ascertained

by Staley, has been much magnified. The only real questions of fact were, whether Davis, in February, 1873, had sufficient mental capacity to make a deed, and whether in September, 1877, he had mind enough to consent that appellees might sell the land. It is rather difficult under the circumstances to come to the conclusion that the spoken words prevented Staley from purchasing, when by the Statute of Frauds he was not legally compelled to; if he had really made a bad bargain with appellees, and when he had the means of as readily ascertaining whether the statement of Van Tuyl was accurate or not, as he would if he had told him the land was full of rocks, or had on it many creeks and sloughs, etc. If this verdict had been for reasonable compensatory damages only, we might say that verdicts should not be interfered with except in clear cases of an indication that there was passion, prejudice, or other improper influence operating upon the jury, and that the power to do so should be sparingly used. While we are disposed to concede that in a case of slander to the title to real estate, there may be evidence of that wanton, willful and malicious attempt to injure the owner of the land, which would justify punitive or exemplary damages (Kendall v. Stone, 2 Sandf. N. Y. 269, cited approvingly by Sedgwick in his work on the Measure of Damages, 6th Ed. p. 679), we do not think this case one for anything more than just and reasonable compensation. Counsel for appellee applies to the conduct of appellant the scriptural quotation "She gave me of the tree and I did eat." Though the consequences in that case were fraught with disaster to the man and the woman, the authority is not fairly applicable to the facts in this case. A sick woman might be anxious about the future comfort of her father, and a husband continually importuned to do so by the wife, might be a little earnest in his discourse on such a subject under her promptings, without being punished for it any more than was necessary to fully compensate one whose title to land may have been injured by words thus spoken.

We think the case is one where the jury, under some influence which was not proper, have made their verdict too large. Even if appellant and his wife did not arrive at a just conclu-

sion as to the fairness of the disposition of the father's estate, this was a question in which they had an interest, and some reasonable latitude of discussion must be allowed to people in defense of their own interests, without their being punished for it.   It does not appear that the motive of appellant was to sell his and his son-in-law's land to Staley.   This is purely imaginary.   Appellant swears that it was not thought of when he spoke the words, and he is not contradicted in this by any one. Without giving a detailed statement of the evidence, we content ourselves with saying that after a careful and thorough consideration of it all, the sum of one thousand dollars actual damage seems quite large, and we think that there should not have been the added punitive damages upon the facts in evidence, but just compensation only, if anything.

The 2nd instruction for plaintiff is erroneous.   The jury are therein directed that they should assess the plaintiff's damages at whatever amount the proofs show they are entitled to, together with such exemplary damages as they may think right and proper under all the circumstances in proof.   To have made the instruction proper, at least the words "if any" should have followed the words " exemplary damages," or there should have been some equivalent expression.   The instruction as given requires the jury to give some punitive damages, leaving the amount only to be fixed as they think right and proper under the facts and circumstances in proof, with no pointing out what facts would make a proper case.   Malice is always necessary to maintain the action, and yet it does not follow that because there is this legal malice that therefore there must always be not only the actual, but also vindictive damages, though perhaps there might be.   The court has convicted the defendant and left the fine with the jury.

It may be well questioned whether punitive damages ought ever to have been allowed to a plaintiff.   Holmes v. Holmes, 64 Ill. 294.   They certainly are not to be favored, and it should not be assumed, as it is in this instruction, that smart-money or exemplary damages should be allowed.   Collins v. Waters, 54 Ill. 485.   If the law were that jurors should always make the separation made in this case, and that the punitive

share should go into the public treasury, where it more justly belongs than to the plaintiff, it would look more like justice and reason.

The injurious effect of this instruction is not removed, because in the first and eighth it is said the jury may give exemplary damages, etc. On a subject like this, each instruction should be correct in itself. C. B. & Q. R. R. Co. v. Payne, 49 Ill. 499; Ch. & Alton R. R. Co. v. Murray, 62 Ill. 326; Baldwin v. Killian, 63 Ill. 550.

The following two unnumbered instructions were, to say the least, calculated to mislead and confuse the jury:

*First.* "The jury are instructed that defendant cannot excuse or justify himself in this case by showing that what he did he did at the urgent request and solicitation of his wife or any other person."

*Second.* "The jury are instructed that in actions of this kind, if a defendant wishes to justify or excuse himself for words spoken, the justification must be as broad as the charge, Therefore, in this case, if the jury find from the evidence that defendant represented and asserted to said Staley that if he (Staley) bought the land in controversy, he (Staley) would buy a law-suit, and asserted and represented a want of capacity in said Asher Davis in the manner and under the circumstances and for the purpose set forth in either the first or second instruction of plaintiffs, then the jury are instructed that defendant cannot excuse himself by showing 'merely' that he or his wife were fearful that if plaintiffs sold the land described, they might spend or waste the proceeds, and that in consequence said Asher Davis might be thrown upon defendant and his wife for support."

Even if they might be accurate as to the mere question whether plaintiffs should have a verdict or not, a jury would be very likely to consider them as meaning that the facts stated should not be taken into account as an excuse in determining the amount of the verdict. Counsel should have distinctly used such words in them, or the court should at least have so modified them as to clearly convey the idea that the plaintiff would be entitled to a verdict, notwithstanding the facts might

be as stated, and that they should only be considered in miti-gation of exemplary damages.   This, however, is not clear as to the last one, because if defendant and his wife were really and honestly fearful that the father might be deprived of the support to which he was entitled under the contract, and be thrown upon the defendant and his wife for support, and that the words were spoken merely for that reason, it is difficult to perceive how there could be a malicious motive to injure, espe-cially if the words were spoken at the urgent request and solic-itation of a wife who had such honest fears, to a husband who also honestly entertained them, though there may have been exaggeration in the statement as to the mental capacity of the father.   It is enough, however, to say that a jury would not if a lawyer might, understand what was meant by the words " excuse or justify," and would consider themselves instructed that such facts made it no better for appellant, and that they should have no influence as to the amount of their verdict.

We think another jury should pass on the case.

Reversed and remanded.