## Coal Belt Electric Railway Company v. George W. Young.

1. ASSAULT AND BATTERY—*what within scope of employment.* Where an employee who was " under orders " of a superintendent in charge of the entire property of the defendant makes an assault while seeking to carry out a particular order of such superintendent, the assault is within the scope of his employment and the defendant corporation is liable.

2. EXEMPLARY DAMAGES—*when award of, proper.* An award of exemplary damages is proper where it appears that the act complained of was wanton, done without prudence or proper caution, or was in reckless disregard of the rights of the person assaulted.

3. INSTRUCTIONS—*must be predicated upon the issues.* Instructions which are not predicated upon the issues in a case are properly refused.

4. INSTRUCTIONS—*must contain all conditions where jury are definitely instructed to find in a particular way.* Where an instruction concludes with a direction to the jury to find in a particular way, it must include all the conditions which would entitle the jury to so find.

5. VERDICT—*when not excessive.* A verdict of $500 in an action for assault and battery is not excessive where the assault was unprovoked, was violent, produced some actual damage, and subjected the party assaulted to considerable humiliation.

Action on the case for assault and battery. Appeal from the Circuit Court of Williamson County; the Hon. WARREN W. DUNCAN, Judge, presiding. Heard in this court at the August term, 1905. Affirmed. Opinion filed March 22, 1906.

WILLIAM H. WARDER, for appellant; FORMAN & WHITNEL, of counsel.

WILEY F. SLATER and ED. M. SPILLER, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case in the Circuit Court of Will-iamson County, by appellee against appellant, to recover for an assault and battery inflicted upon appellee by one of the servants of appellant, while appellant and appellee sustained to each other the relation of common carrier and passenger. Trial by jury. Verdict and judgment in favor of appellee for the sum of $500.

Appellant operated a line of electric railway in William-son County, having among other stations, one at Marion and one three and one-half miles northwest of Marion, called Electric Park. At the latter place appellant main-tained in connection with its railway business a pleasure park, in which was conducted a summer theatre. In some way and to some extent not fully disclosed by the evidence, this summer theatre was also under control of appellant as a means of attracting passengers over its railway, from Marion and other points along its line to the park. The general business of appellant in connection with the opera-tion of its cars and the management of its park and appur-tenances was under the control of a general superintendent who had plenary power. This superintendent employed one Thomas F. Waters to assist him at the park. The whole duty of Waters was to obey the orders of the super-intendent, and that he might with greater efficiency serve appellant, the superintendent procured the sheriff of Will-iamson county to commission him as a deputy sheriff. He was not in the public service as a deputy sheriff, but in the private service of appellant, wholly paid by appellant and under appellant's control.

Appellee was a well known and highly honored and re-spected citizen of Williamson county, where he had resided all his life, and was sixty years old. The evidence clearly tends to prove that on the evening of June 30, 1905, appel-

lee attended the theatre at appellant's park and after the performance was over, as he was in the act of getting on one of appellant's cars to return to his home in Marion, without any kind of notice or warning and without any just cause, lawful excuse or reasonable provocation, he was violently seized by Waters and thrown backwards, falling on his back upon an embankment four or five feet away, whereby he was jarred and stunned and somewhat injured in his knee joints and ankles for two or three days; his clothes were ruffled and soiled, and he suffered the humiliation and indignity consequent upon such assault, under such circumstances. There is almost no controversy as to the facts of the case up to this point.

It is contended by counsel for appellant that the evidence fails to show that Waters was acting within the scope or apparent scope of his employment. We think this position not well taken. The evidence shows that appellant's general superintendent who had charge not only of its transportation business, but of its park and of whatever interest it had in the theatre, had employed Waters, and that it was the duty of Waters to " follow orders." So far as this record discloses, the full measure of his duties was to obey and carry out any and all orders given him by the superintendent.

The further circumstances attending the assault, as claimed by appellant, are, that about the time the theatrical performance closed, a Mr. Lincoln, who was manager of the theatre, was about to board the car and leave the park without paying the piano player $2.50 which he owed her; that the general superintendent was present and ordered Waters to arrest Lincoln and not let him get on the car until he paid the piano player; that Lincoln and appellee were near together, but appellee was between Waters and Lincoln and Lincoln had reached the car steps; that as they approached the car steps appellee was still between Waters and Lincoln and in order to catch Lincoln before he would get into the car, Waters seized appellee and threw him as above stated. Waters testified :  " I was mad when

I threw Judge Young on the ground there; threw him with enough force to get him out of the way. * * * I didn't look back to see what became of him. * * * Didn't say a word to Judge Young before I grabbed him by the arms and threw him to the ground. * * * At the time I grabbed Judge Young I was acting on the orders of Mr. Aper (the general superintendent) who had ordered and directed me to do that (to arrest Lincoln), and was there on the car. * * * I had to throw him out of the way," to get Lincoln. This tort was committed by the servant while in the act of carrying out his master's orders, and as a means thereunto. It was clearly within the scope of his employment.

Counsel further contend that it was not within the apparent scope of the employment of the general superintendent to order Waters to arrest Lincoln, and for that reason appellant is not responsible for the consequences therefrom. The general superintendent had full control over appellant's transportation facilities and passenger business, as well as over its park and its appurtenances. Appellee was at the time on appellant's premises in the act of boarding its car to be carried to his home; he was in law, at the time, a passenger. Any act or order of this general superintendent that might directly affect the comfort or safety of a passenger would be within the apparent scope of his employment.

Counsel for appellant place the principal stress of this appeal upon the alleged errors of the trial court in the giving of the sixth and seventh instructions on behalf of appellee, and the refusal to give the third and eighth instructions asked on behalf of appellant. These instructions all relate to the question of exemplary damages: the contention of counsel being that the evidence in this case does not warrant the assessment of exemplary damages, and that the submission of that question to the jury was error. In support of their contention counsel cite Hawk v. Ridgway, 33 Ill. 473; Farwell v. Warren, 51 Ill. 467; T., P. & W. R. R. Co. v. Patterson, 63 Ill. 304, and Holmes v. Holmes, 64 Ill. 294.

In Hawkes v. Ridgway, the court says: "Where the wrong is wanton, or is wilful, the jury are authorized to give an amount of damages beyond the actual injury sustained, as a punishment, and to preserve the public tranquillity" (exemplary damages). And in that case the court also says: "Where the wrong-doer acts in good faith, with honest intentions, and with prudence and proper caution * * * exemplary damages are improper." In Farwell v. Warren, the court says: "It is not necessary, to warrant a finding of exemplary damages, that express malice should be proved. If it appears that a party has acted with a wanton, wilful or reckless disregard of the rights of the plaintiff, malice would be inferred. All persons are presumed to know the law, and when they take the law into their own hands, and invade the rights of another, it is evidence of what might be regarded general malice. It is not necessary that a pique or grudge against the injured party should be shown." There is nothing in the other two cases cited that in the least modifies or changes the rule as laid down in the two cases here quoted from.

Tested by these authorities there can be no doubt as to the propriety of submitting the question of exemplary damages to the jury in this case. The whole transaction on the part of the superintendent and Waters was lawless and in utter disregard of the rights of others. They had neither a lawful right nor color of right to pursue and arrest Lincoln, and it is difficult to see, in the light of the evidence, how they could have been acting in good faith or with honest intentions with respect to any part of what occurred on that occasion; but, if this could be assumed or found to be true, still, it is clear beyond dispute that as to appellee the act was not done "with prudence and proper caution." To say the least, it was done in "reckless disregard" of his rights, and this alone is sufficient to warrant the assessment of exemplary damages.

The special objection urged against the seventh instruction is, that it authorizes a recovery without reference to what Waters' intention was. As to actual damages this

is conceded by counsel to be correct, but they insist that the form of the instruction is such as that it might mislead the jury to believe that it included exemplary damages also. We think that when the instruction is considered in connection with appellee's sixth instruction, which clearly differentiates between the two kinds of damages, and clearly and correctly states the conditions upon which exemplary damages may be given, and in connection with appellant's third given instruction, which strongly emphasizes the only conditions upon which exemplary damages can be given, that the jury could not have misunderstood its meaning or in any way have been misled by it.

Appellant's third refused instruction is as follows:

"3. In case you believe from a preponderance of the evidence that plaintiff has sustained no actual damages by reason of the acts of defendant's employee, Thomas F. Waters, shown in the evidence, then in such case you would not be warranted in law in imposing vindictive or exemplary damages upon defendant, and your verdict should be not guilty."

This instruction was properly refused for two reasons. There was no issue open as to existence of some actual damages. The wholly undisputed evidence established that fact conclusively. As to that feature of the case, the only question open at the time the jury was to be instructed was the amount, and any substantial amount of actual damages will support exemplary damages in a proper case for such damages. And then the instruction required the jury to find the defendant "not guilty." There is no theory of this case under appellant's evidence alone that would warrant a verdict of "not guilty."

Appellant's eighth refused instruction is:

"8. Even though you should believe from the evidence that Thomas E. Waters, in the encounter with plaintiff shown in the evidence, acted from a mistaken sense of duty, yet, if you further believe from the evidence that there was nothing wanton or malicious in what he did, and that he acted in good faith, in what he believed to be his

duty, you would not be justified in imposing vindictive or exemplary damages on defendant."

This instruction authorizes a verdict which shall exclude all exemplary damages upon a finding of the conditions stated in the instruction, and it does not include all the conditions shown by the evidence to be involved in this case warranting exemplary damages. It omits "with prudence and proper caution" in the manner of doing the wrongful act. And further, the undisputed evidence is, that Waters wilfully and unlawfully assaulted appellee. In Reeder v. Purdy, 48 Ill. 261 (262), the court says: "That the assault and battery in this case was malicious, in the legal sense of that term, is clear, since it was wilful, and, as we have held, unlawful, and that, for such an assault and battery, vindictive damages can be given, is familiar law." The case of T., P. & W. R. R. Co. v. Patterson, *supra*, cited by counsel for appellant, is not an assault and battery case, and sheds no light upon the question of exemplary damages as it arises out of the facts of this case, nor does the case of Holins v. Holins, *supra*, also cited, which is a slander case.

Finally it is insisted that there was no ill will towards appellee, that the actual damages were slight, and that the verdict is excessive.

While the question of actual ill will towards appellee is not of controlling importance, it is of some value in this connection to consider what the state of mind of the respective parties was. The evidence tends to prove that appellee had no knowledge of the presence of Waters or of any purpose on the part of anyone to pursue or arrest Lincoln, and was in the act of getting into a public conveyance in a quiet and orderly manner, in a public place. Waters was angry without any cause or provocation on appellee's part, seized appellee, threw him violently to the ground, didn't look back to see what became of him, and immediately afterwards said to him, in substance, if you get in my way again when I am after a man "I will make you think a mule has kicked you;" and the superintendent said: "I don't want any God-damned law-suit. I don't

want any lawyer prying into my business. " To say the least, this evidences a reckless and dangerous state of mind on the part of both the superintendent and Waters, for which appellee was in no sense to blame, and in which state of mind they were prostituting the official power that appellant had procured to be conferred upon Waters for its own benefit, in the accomplishment of its own unlawful purposes, acting through the person of its general superintendent, there present. .

The amount of appellee's damages cannot be estimated by counsel or by the court. The indignity and humiliation to which he was subjected and the injury to his feelings are as truly actual damages in this class of cases as injuries to the person and pain and suffering; or as would have been the loss of time and expenses of endeavoring to be cured, had these occurred. How much, if any, of this amount awarded by the jury is for other than actual damages we cannot assume, but it is quite apparent to us that upon the whole case the damages awarded are not excessive.

The judgment of the Circuit Court is affirmed.

*Affirmed.*