MISSOURI, KANSAS & TEXAS RAILWAY COMPANY v. HARRY C. WISE.

No. 1809. Decided April 1, 1908.

**1.—Laws of Indian Territory—Common Law Adopted by Statute.**

The Federal Courts follow the decisions of those of the States upon questions of local statuory law and construction, but are not bound by them on questions of general or commercial law, though this was in force in the locality by legislative adoption of the common law. (Pp. 464, 465.)

**2.—Master and Servant—Laws of Indian Territory—Common Law, Arkansas Statutes.**

The adoption by Act of Congress of certain statutes of Arkansas for the government of the Indian Territory, including that adopting the Common Law in Arkansas, did not adopt or give controlling effect in the Territory to the decisions of the Arkansas Courts as to what were the principles of the Common Law as to master and servant. (Pp. 462–465.)

**3.—Same.**

The courts of Texas, in determining the Common Law as to master and servant existing in the Indian Territory by Act of Congress enacting for such Territory the statute of Arkansas adopting the Common Law, will follow the decisions of the Supreme Court of the United States, the court of last resort for such territory, in preference to those of the Supreme Court of Arkansas on the same subject, where the two are not in accord. (Pp. 464–466.)

**4.—Same.**

The rule that the master is liable for injury to his servant by negligence of a fellow servant in discharge of a personal obligation of his master to the injured party, the performance of which the master has intrusted to him, is recognized as the Common Law rule followed by the Supreme Court of the United States and in force in the Indian Territory. (P. 465.)

Error to the Court of Civil Appeals for the Fifth District in an appeal from Grayson County.

The railway company appealed from a judgment recovered against it by Wise, and on affirmance obtained writ of error.

*Coke, Miller & Coke* and *Smith & Wall,* for plaintiff in error.— Under the common law as construed by the Supreme Court of Arkansas, such trackmen and track repairers, inspectors and repairers of cars, engines and the like as occupy subordinate positions and do not have general supervision and control of their departments, are

fellow-servants of men engaged in operating trains for the same railroad. St. Louis, I. M. & S. Ry. Co. v. Harper, 44 Ark., 524; St. Louis, I. M. & S. Ry. Co. v. Gaines, 46 Ark., 555; St. Louis, I. M. & S. Ry. Co. v. Rice, 51 Ark., 467; St. Louis, I. M. & S. Ry. Co. v. Brown, 54 S. W. Rep., 866; 1 Bailey, Personal Injuries, sec. 270; 2 Bailey, Personal Injuries, secs. 1819A-1818.

It was the evident intention of Congress by the Act of May 2, 1890, in adopting chapter 20 Mansfield's Digest of the laws of Arkansas for the Indian Territory to adopt the common law, as construed by the courts of Arkansas, as a system of law for that country. (26 U. S. Stat. at Large 94, sec. 31.) The rules of the common law as construed in different jurisdictions differ and a known system was adopted, and it has been so held. St. Louis & S. F. Ry. Co. v. Arnett, 37 Texas Civ. App., 523; Gulf, C. & S. F. Ry. Co. v. Johnson, 54 Fed. Rep., 476.

The courts will take judicial notice of this act of Congress. Belt v. Gulf, C. & S. F. Ry. Co., 4 Texas Civ. App., 234.

It is the contention of petitioner that the courts will take judicial notice of the common law as construed by the courts of Arkansas. Ordinarily the statutes and decisions of other States must be plead and proven. Pac. Ex. Co. v. Pittman, 71 S. W., 312.

The Act of Congress of May 2, 1890, adopted Chapt. 20 Mansfield's Digest. But what Chapt. 20 is the courts ascertain by reference to the statutes of Arkansas, the courts do this because it is part of the law. Are not the decisions of the courts of that State as much a part of the law as the chapter of Mansfield's Digest? If the courts take notice of a part of the law not included in the language of the Act of Congress, for what reason should they not take notice of all. The rule is the same as to decisions and a statute. Ferd. Heim v. Gimber, 72 Pac. Rep., 859. The first time this act of Congress was before the Appellate Courts of this State, the court took judicial notice of the act and of the decisions of Arkansas construing its provisions. Apollas v. Staniforth, 3 Texas Civ. App., 506. In a case where evidence was offered the court noticed other decisions of the Supreme Court of Arkansas. St. Louis & S. F. Ry. Co. v. Arnett, 37 Texas Civ. App., 523.

The rights of the parties to this suit depend on the construction of so much of the act of Congress of May 2, 1890, as puts Chap. 20 Mansfield's Digest in force in the Indian Territory, and hence involves the construction of a Federal statute and a Federal question. Pacific Removal Cases, 115 U. S., 1; Bock v. Perkins, 139 U. S., 628; McKee v. Brooks, 64 Texas, 255; Sonnentheil v. Brewing Co., 172 U. S., 401; Ellis v. Norton, 16 Fed. Rep., 4. Where a Federal question is involved, State courts will take judicial notice of law of other States. Trowbridge v. Spinning, 54 L. R. A., 204; Butcher v. Bank, 2 Kan., 70; Dodge v. Coffin, 15 Kas., 277; Ohio v. Hinchman, 27 Pa. St., 479; Paine v. Schenectady Ins. Co., 11 R. I., 415; Henry v. Allen, 82 Texas, 35. The decision in Henry v. Allen, supra, is in conflict with Rosenthal v. Lennox on this question.

State courts will take judicial notice of everything that enables them to know State laws. (Alexandria, A. & Ft. S. Ry. Co. v.

Johnson, 59 Pac. Rep., 1066.)     State courts equally take judicial notice of everything that enables them to know what general Federal laws are.

*C. B. Randell* and *J. H. Wood,* for appellee.—In the absence of pleading and proof of the law of a foreign State, the rights of the parties are determined by the laws of the State of Texas. Crosby v. Houston, 1 Texas, 231; Armendiaz v. Serna, 40 Texas, 298; James v. James, 81 Texas, 381; Missouri, K. & T. Ry. Co. v. Thompson, 11 Texas Civ. App., 667; St. Louis, I. M. & S. Ry. Co. v. Brown, 54 S. W. Rep., 867.

As a corollary to the above proposition, the courts of Texas can not take judicial knowledge of the laws of a foreign State, and therefore can not take judicial knowledge of the decisions of Arkansas. Such is the only conclusion that can be drawn from the Texas authorities above quoted. In addition, however, to those authorities we cite Pacific Exp. Co. v. Pitman, 71 S. W. Rep., 313.

While the courts of Texas take judicial knowledge of the act of Congress, putting certain statutes of the State of Arkansas in force in the Indian Territory, no decisions of the State of Arkansas were made the law of the Indian Territory by the act of Congress, and this State will not take judicial knowledge of any construction of the common law by the courts of Arkansas. Pacific Exp. Co. v. Pitman, 71 S. W. Rep., 312; Missouri, K. & T. Ry. Co. v. Thompson, 11 Texas Civ. App., 667; Goddard v. Reagan, 8 Texas Civ. App., 275; Texas & P. Ry. Co. v. Cox, 145 U. S., 606.

This court will take judicial knowledge that appeals from the Indian Territory courts go to the United States Circuit Court of Appeals, and from there to the Supreme Court of the United States; and that the decisions of the Supreme Court of the United States on this question will control. The decisions of the Supreme Court of the United States on this question are the same as those of the Supreme Court of Texas. Northern Pac. Ry. Co. v. Herbert, 116 U. S., 647; Union Pac. Ry. v. Daniels, 152 U. S., 689; Hough v. Texas & P. Ry. Co., 100 U. S., 213; Missouri, K. & T. Ry. Co. v. Wilhoit, 98 S. W. Rep., 343.

Mr. Justice Williams delivered the opinion of the court.

Defendant in error, while in the service of plaintiff in error as brakeman, was hurt near Gibson in the Indian Territory on the 20th day of July, 1904, and afterwards brought this action and recovered the judgment now before us in Grayson County, Texas, for damages, on the ground that his injuries were caused by the negligence of the railway company. The evidence is sufficient to sustain his allegations that, in the proper discharge of his duties, he stood upon the step of the pilot of the engine drawing the train upon which he was acting as brakeman and, while riding there in order to be in readiness to throw a switch towards which the engine was moving, he was caused to slip from the step by reason of the facts, that, from use it had become slick and was inclined downward instead of upward as it should have done, from which causes it was defective

and dangerous for such uses; and also because the engine passed over a "low joint" in the track, negligently permitted by defendant to exist there, causing a jolt which helped to throw him off the step. There were also allegations and evidence that the engineer carelessly produced a jerk in the movement of the engine which may have caused or contributed to the occurrence, but the trial court in unmistakable language instructed the jury that there could be no recovery for the negligence of the engineer, for the reason that, under the law of the Indian Territory, he was a fellow servant of the plaintiff. The charge allowed a recovery only upon the ground of negligence of the company in failing to exercise ordinary care to keep the track and the step of the engine in a safe condition and in case such negligence proximately caused or concurred with that of the engineer in causing plaintiff to fall from the step.

The present complaint of the plaintiff in error is that there was error in some of the instructions of the trial court concerning the law of the Territory as to the relation between the plaintiff and those of its employes whose duty it was to see to the condition of the track and of the step of the engine, its contention being that by such law the plaintiff and such employes were fellow servants.

It is conceded that the question depends upon the common law, and it is not claimed that the courts of the Territory, or the Supreme Court of the United States, to which cases may go upon appellate proceedings from those courts, have determined the common law upon the question to be otherwise than it was declared to be by the decisions of this court rendered before the changes made by our recent statutes, but it is urged that certain decisions of the Supreme Court of Arkansas have so declared the common law as to make such employes as those in question fellow servants, and that the rule as thus declared had been made the law of the Territory by the Act of Congress of May 2, 1890, which put in force therein certain statutes of Arkansas, including one which, in general terms, had adopted for that State the common law of England.

We shall not pause to determine what would be the result were those decisions acknowledged to have been the law in the Indian Territory. We remark, however, that, while the decisions referred to may be admitted to differ in some particulars from those of this court, it is by no means clear that the points of difference are material to this case. (St. Louis, I. M. & S. Ry. Co. v. Harper, 44 Ark., 524; St. Louis, I. M. & S. Ry. Co. v. Gaines, 46 Ark., 555; St. Louis, I. M. & S. Ry. Co. v. Rice, 51 Ark., 467; St. Louis, I. M. & S. Ry. Co. v. Brown, 54 S. W. Rep., 866; Western Coal & Mining Co. v. Buchanan, 82 Ark., 499, 102 S. W., 694.)

Pursuit of this line of inquiry would not, in our opinion, be the true way in which to reach a solution of the question in this case. The law which controls is that which existed in the Indian Territory, when the tort is alleged to have been committed, and not that of Arkansas. Any inquiry into the law of that State would be made only for the purpose of ascertaining the law of the Territory upon the assumption that the rules declared in the former constituted the law of the latter. Neither the law of Arkansas nor that of the

Territory has been proved, but it is insisted that, inasmuch as the law of the latter had been established by an Act of Congress, we should take judicial notice of it. If this is true, it is the law of the Territory of which such notice is to be taken, and we may ascertain that more directly than by inquiring into the law of Arkansas and assuming it to have been the same as that of the Territory.

We think it is true that we must take notice of the Act of Congress; and, as it adopted for the Territory certain chapters of Mansfield's Digest of the law of Arkansas, the effect was the same as if the provisions of those chapters had been originally adopted by Congress and were contained in the act passed by it. We therefore take notice of the provisions of Mansfield's Digest precisely as if they were provisions of the Act of Congress. This has been held by the Courts of Civil Appeals for many years and by this court in passing upon applications for writs of error. (Apollos v. Staniforth, 3 Texas Civ. App., 506; Belt v. Gulf, C. & S. F. Ry. Co., 4 Texas Civ. App., 234, and authorities cited; Railway v. Brown, supra.)

In order that the decisions of the Federal Courts to which we shall refer may properly be understood, it is proper to state that the Act of Congress adopted for the Indian Territory much of the statute law of Arkansas contained in Mansfield's Digest. It also adopted chapter 20 of that Digest by which the common law of England was put in force in Arkansas.

In cases originating in the Indian Territory in which questions have arisen under the local statutory law thus imported from Arkansas, the Federal Courts have held that, as such questions depended upon the local statutes, construction put upon them by the Supreme Court of Arkansas in their application to such questions before their adoption for the Territory should control. (Robinson v. Belt, 187 U. S., 41; Blaylock v. Muskogee, 117 Fed. Rep., 125.) In the case first cited a question was involved as to the validity of an assignment for the benefit of creditors which contained a clause exacting releases from those accepting, as a condition of their being allowed to participate as beneficiaries. The Supreme Court held that, under its previous decisions, the question must be treated as one of local law, depending on the statutes in force where the transaction occurred, and that, as the Supreme Court of Arkansas had held such conveyances to be valid under its statutes regulating assignments and fraudulent conveyances before their adoption for the Indian Territory, the local law of the Territory should be regarded as being the same as that enunciated in the Arkansas decisions. In the other case cited the question was as to the liability of a municipal corporation for an injury caused by a defect in one of its sidewalks. Among the statutes of Arkansas adopted by the Act of Congress was that relating to municipal corporations. Before such adoption, it had been held by the Supreme Court of Arkansas that no such liability against municipal corporations existed in that State. Again, it was held that the decision depended upon the local statute, the construction of which followed it into the Territory and should be regarded as the established law therein. But the court was careful

to say: "The decisions of the Supreme Court of Arkansas, which established this rule, were not determinations of questions of general or commercial law, but were the interpretation of the local law—of the local statutes of Arkansas—which measured the powers and liabilities of municipalities in that State. The Federal Courts uniformly follow the construction of the constitution and statutes of a State announced by its highest judicial tribunal in all cases that involve no question of general or commercial law. . . ." Other cases to like effect might be cited.

Now, it is urged that, since the adoption of the statutes of Arkansas for the Indian Territory is held to have carried with them the settled construction which had been put upon them in the State, it should also be held that the adoption of the statute which put the common law in force in the State, should be held to have established in the Territory whatever the Supreme Court of Arkansas had declared the common law to be. But this does not follow. In declaring the common law the Supreme Court of Arkansas did not construe any statute. The provision in Mansfield's Digest merely put that system of law in force in Arkansas, leaving the courts to determine what its rules and principles are. Likewise the Act of Congress put the common law in force in the Indian Territory. No word of either statute is to be construed in determining any question depending on the common law. The decision is to be made outside the statute, for Arkansas by its own courts, for the Territory by the courts provided by Congress to declare the law therein. The argument, that because Congress referred to a statute of Arkansas which adopted the common law it adopted all the previously expressed views of the highest court in Arkansas as to what the common law was, overlooks the fact that when the common law is put in force in a State, or Territory, the courts therein are supposed to know its rules and principles equally with the courts of all other jurisdictions administering it. The Act of Congress is the same in its effect as if it had directly adopted the common law, as doubtless it would have done, with suitable modifications, but for the fact that it found it in force in Arkansas in connection with statutes, forming a body of laws deemed suitable for the Indian Territory. The local statutes of Arkansas were adopted with the meaning which had been held to attach to their words, but the common law was adopted upon the assumption that its rules and principles were equally known to all courts in this country. Courts were established in the Territory to enforce this system of law and what its rules upon any particular subject were neither the Act of Congress nor the statute of Arkansas attempted to define. All such questions were left to the courts. Neither statute attempts to fix the relation between the master and servant, nor those between co-employes. Questions arising out of those relations are general, determinable by the principles of the common law which the courts administering law in the Territory could determine for themselves. That this is true has often been held by the Supreme Court of the United States, which has applied to the cases before it, arising in the different States, its own views of the common law regulating questions arising out of the relations of co-

employes towards each other and towards their employer, even though its views differed from those of the highest court of the State where the case arose. (Hough v. T. & P. Ry. Co., 100 U. S., 213; Gardner v. Mich. Cen. R. R. Co., 150 U. S., 358-9, and cases there cited.)

It follows that, as the ultimate determination of cases arising in the Indian Territory may be made by the Supreme Court of the United States, the rulings of that court as to what are the applicable rules of the common law are to be accepted as the highest evidence of the common law of the Territory. This is the view accepted by the Court of Appeals of the Territory as appears from its decision in Missouri, K. & T. Ry. Co. v. Wilhoit, 98 S. W. Rep., 343-345. In that case the court thus stated and applied the decisions of the Supreme Court upon the question now before us: "In Union Pacific R. R. Co. v. Snyder (152 U. S., 684), 14 Sup. Ct., 756, 38 L. Ed., 597, the court says it is the duty of the company to inspect, and that this duty can not be delegated so as to shield the company from liability when a servant is injured, and that the company can not claim that it has performed its duty in this regard when it has furnished sufficient and competent inspectors. In Northern Pac. R. R. Co. v. Peterson, 162 U. S., 346, 16 Sup. Ct., 843, 40 L. Ed., 994, the court said: 'The general rule is that those entering into the service of a common master become thereby engaged in a common service and are fellow servants, and, prima facie, the common master is not liable for the negligence of one of his servants which has resulted in an injury to a fellow servant. There are, however, some duties which a master owes, as such, to a servant entering his employment. He owes the duty to provide such servant with a reasonably safe place to work in, having reference to the character of the employment in which the servant is engaged. He also owes the duty of providing reasonably safe tools, appliances and machinery for the accomplishment of the work necessary to be done. He must exercise proper diligence in the employment of reasonably safe and competent men to perform their respective duties, and it has been held in many States that the master owes the further duty of adopting and promulgating safe and proper rules for the conduct of his business, including the government of the machinery and the running of trains on a railroad track. If the master be neglectful in any of these matters, it is a neglect of a duty which he personally owes to his employes, and, if the employe suffer damage on account thereof, the master is liable. If, instead of personally performing these obligations, the master engages another to do them for him, he is liable for the neglect of that other, which, in such case, is not the neglect of a fellow servant, no matter what his position as to other matters, but is the neglect of the master to do those things which it is the duty of the master to perform as such.' "

From these sources, without resort to the decisions in Arkansas, we learn what the law of the Indian Territory was upon the question whether or not the section foreman and the employes in the roundhouse, to whom was delegated, respectively, the duty of seeing to the condition of the track and of the engine by reason of defects

in which plaintiff received his injuries, were fellow servants with plaintiff; and we find that law was that they were not.

. If any of the rulings of the trial court of which complaint is made were erroneous, they were so by reason of being too favorable to the defendant, and of this it can not complain.

*Affirmed.*