## St. Louis & San Francisco Railroad Company v. T. G. Summers.

### Decided May 23, 1908.

**1.—Railroad Crossing—Failure to Look and Listen—Law of Indian Territory.**

Under the decisions of the United States Appellate Courts having jurisdiction in the Indian Territory, it is a question of fact for the jury, and not one of law for the court, to determine whether a person injured by a passing train at a railroad crossing was guilty of contributory negligence in failing to look and listen before entering upon the crossing.

**2.—Same—Discovered Peril—Evidence.**

In a suit for the value of a team of horses and a wagon injured by a passing train at a railroad crossing, evidence considered, and held sufficient to require the court to submit the issue of discovered peril to the jury, and to support their verdict against the defendant company.

**3.—Same—Same—Charge Approved.**

A charge which, upon the issue of discovered peril, instructed the jury that it was the duty of the defendant to use all the means they had at hand to prevent the collision, instead of, to exercise ordinary care by the use of the means at hand to prevent the collision, considered and approved.

**4.—Negligence as Matter of Law—Violating City Ordinance.**

Running a railroad train within the corporate limits of a city or town at a greater rate of speed than that prescribed by an ordinance, is negligence as matter of law.

Appeal from the County Court of Grayson County. Tried below before Hon. H. W. Hassell.

*C. H. Yoakum* and *McReynolds & Hay,* for appellant.—Under the law of the Indian Territory it was the duty of said Magar, as a matter of law, to look and listen for approaching trains, and to continue to look and to listen until he had crossed over said track. Failure on his part to do so constituted contributory negligence, which would prevent a recovery by plaintiff unless the employes of the defendant discovered his danger in sufficient time to have avoided the accident. St. Louis & S. F. R. R. Co. v. Crabtree, 62 S. W., 64; St. Louis, I. M. & S. R. R. Co. v. Johnson, 86 S. W., 282; Chicago, R. I. & Pac. Ry. Co. v. Houston, 95 U. S., 697; Chicago, R. I. & P. Ry. Co. v. Pounds, 27 C. C. App., 112; McCrory v. Chicago, M. & St. P. Ry. Co., 31 Fed. Rep., 531; Missouri Pac. Ry. Co. v. Moseley, 57 Fed. Rep., 921; St. Louis, I. M. & S. Ry. Co. v. Taylor, 42 S. W., 831; Martin v. Little Rock & Ft. S. Ry. Co., 34 S. W., 545; St. Louis, I. M. & S. Ry. Co. v. Leathers, 35 S. W., 216; Little Rock & Ft. S. Ry. Co. v. Dinseman, 16 S. W., 169; St. Louis S. W. Ry. Co. v. Dingman, 35 S. W., 219; International & G. N. Ry. Co. v. Edwards, 93 S. W., 107; Northern Pac. Ry. Co. v. Freeman, 174 U. S., 379; 43 L. Ed., 1014; Schofield v. Chicago, M. & St. P. Ry. Co., 114 U. S., 615; 29 L. Ed., 224.

The charge is on the weight of evidence, and instructs the jury it was the duty of the defendant to exercise a higher degree of care than legally incumbent upon it, in this: That the court instructed the jury, if defendant's employes saw said Magar near the track, and that it reasonably appeared he would not probably stop before he reached the track, and they failed to use the means at hand to stop the train, etc., to find for plaintiff. The defendant's employes were not required to stop the train or slacken the speed until they discovered Magar in a position of actual danger. Missouri, K. & T. Ry. Co. v. Eyer, 69 S. W., 453, and 96 Texas, 72; International & G. N. Ry. Co. v. Welch, 86 Texas, 203; Texas & Pac. Ry. Co. v. Staggs, 37 S. W., 609; Chicago, R. I. & T. Ry. Co. v. James, 75 S. W., 930.

*J. B. Maxey* and *Wolfe, Hare & Maxey,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—This suit was filed in the County Court of Grayson County by T. G. Summers on the 20th day of December, 1905, to recover the sum of three hundred and thirty dollars, damages on account of the killing of a team of horses and damage to wagon and harness, the property of plaintiff, which it is alleged was caused by the negligence of the defendant and its employes in the operation of a train which struck said team at Townsend Avenue in the town of Ada, Indian Territory, said accident alleged to have occurred on or about the 31st day of October, 1905.

Defendant answered by a general denial, and by special plea to the

effect that at the time said team was struck same was being driven by
one David Magar, and that the injury was caused or occasioned by the
want of ordinary care and the negligence of the said Magar; that it
was the duty of said Magar, as a matter of law, to stop, look and listen
for approaching trains; that he failed to take any precaution for his
own safety, or for that of the plaintiff's horses and wagon; that he was
guilty of contributory negligence, as a matter of law, and that the negli-
gence of said Magar was such as to prevent a recovery on the part of
the plaintiff. The cause was tried in the County Court of Grayson
County on May 31, 1907, and judgment rendered in favor of the plain-
tiff for the sum of $314. The plaintiff filed a remittitur of $14, and de-
fendant's motion for a new trial was overruled. The defendant duly
perfected its appeal to this court.

The main line of appellant's railroad crosses Townsend Avenue at
Ada, Indian Territory, from the southwest to the northeast. There are
four switches, or spur tracks, crossing Townsend Avenue, two north and
two south of the main line. The oil mill track crosses Townsend Avenue
about 170 feet north of the main line crossing. The house track crosses
it 60 feet north of the main line. The passing track is just south of
the main track. From the oil mill track to the house track is about
135 feet. From the house track to the main line it is about 60 feet.
A person standing on the oil mill track where it crosses Townsend
Avenue can see a train approaching from the southwest for a distance
of one-fourth of a mile. A person standing on the house track crossing
on Townsend Avenue can see a train approaching from the southwest
for the distance of one-half a mile. The appellee's horses with the
wagon attached were being driven by one Magar south on Townsend
Avenue, when they were struck by defendant's train approaching on the
main track from the west and the horses killed and the wagon and har-
ness damaged.

The fourth and eleventh assignments of error are grouped and are as
follows:

"4th. The court erred in giving the jury the eighth paragraph of his
charge wherein he left it as a question of fact for the jury to determine,
whether or not the said Magar was guilty of contributory negligence in
approaching the crossing where he was struck and killed; and in not
instructing the jury that the said Magar, as a matter of law, was guilty
of contributory negligence, and that they should find for the defendant,
unless they should believe that the defendant's employes failed to use
all the means at their command to stop said train after they discovered
said Magar would probably not stop before he reached the track, or
would not pass over same in time to avoid a collision with the engine."

"11th. The court erred in refusing to give to the jury the defend-
ant's seventh special instruction as follows: 'You are instructed that
under the law in force in the Indian Territory where the injuries com-
plained of occurred, which law controls in ascertaining the rights and
liabilities of the parties to this suit, it is the duty of a party approaching
a railroad crossing to exercise his faculties of sight and hearing to avoid
danger; and to that end he is required to look up and down the track and
to listen for the purpose of discovering whether a train is approaching.
Failure on his part to so exercise his faculties constitutes contributory

negligence, which will bar a recovery for injuries sustained. If, therefore, you believe from the evidence that at the time Magar drove toward the railroad crossing, he failed to listen for the train, which was approaching, or to look down the track in the direction from which the train was approaching, you are instructed that in so failing to look and listen, if you so find, he was guilty of contributory negligence, and that the plaintiff can not recover, even though you may believe that defendant's agents and employes were also guilty of negligence in the operation of the train.'"

It is contended that it was the duty of Magar, before driving on the crossing, as a matter of law, to look and listen for approaching trains and to continue to look and to listen until he had crossed over said track, and that failure on his part to do so constituted contributory negligence which would prevent a recovery by plaintiff, unless the employes of the defendant discovered his danger in sufficient time to have avoided the accident. When Magar drove upon the crossing he was watching the switch engine which was doing switching on the passing track. After he crossed the oil mill track his view down the track west was obscured by the section house. After that his view was obstructed by the oil tank and the little oil house. After passing these obstructions he was within twenty feet of the main track and still watching the switch engine. As the team was driven on the main track the driver was attracted by the whistle of the train rapidly approaching from the west. He immediately tried to back his team off the track, but before he could do so they were struck by the train. There was evidence that the train was running at the rate of twenty-five miles per hour at the time.

The common law is in force in the Indian Territory. As to the construction put upon the common law by the courts of the Indian Territory, we must look to the decisions of the Supreme and Appellate Courts of the United States, which courts have the ultimate determination of cases tried in the courts of that Territory. (Missouri, K. & T. Ry. Co. v. Wise, 101 Texas, 459.) The decisions of these courts hold that it was a question for the jury to determine whether David Magar in driving upon the crossing under the circumstances surrounding him at the time, was in the exercise of care for his own safety and that of his team, and this issue was properly submitted in the court's charge. Grand Trunk Ry. v. Ives, 144 U. S., 408; Dunlap v. Northeastern Ry. Co., 130 U. S., 649; Jones v. East Tennessee Ry., 128 U. S., 443; Ramsey v. Louisville, C. & L. Ry. Co., 20 S. W., 163; Chicago, St. P. & K. C. Ry. Co. v. Chambers, 68 Fed. Rep., 148; Union Pac. Ry. Co. v. Jarvi, 53 Fed. Rep., 69; Choate v. San Antonio & A. P. Ry. Co., 90 Texas, 88; Gulf, C. & S. F. Ry. Co. v. Lankford, 88 Texas, 503; Continental Improvement Co. v. Stead, 95 U. S., 161; 2 Thomp. Com. Law Neg., sec. 1609. The question of whether or not David Magar in driving upon the crossing was guilty of negligence was one of fact for the jury to determine from all the evidence. It is only when the facts are undisputed and are such that reasonable minds may draw but one conclusion from them that the question of negligence is ever considered one of law for the court.

Error is assigned to the ninth paragraph of the court's charge as follows: "If you believe from the evidence that when the engine that killed said team was approaching said crossing on Townsend Avenue

on said occasion, the employes of defendant operating said train saw David Magar near defendant's track at said crossing, driving toward said crossing, and it reasonably appeared to said employes that the said David Magar would not probably stop before he reached said track, or would not pass over the same in time to avoid a collision with said train, and if you further believe from the evidence that said employes then failed to use all the means they had at hand, consistent with the safety of said engine, to stop the same and prevent a collision, and if you further believe from the evidence that by the use of all the means they had at hand for stopping said engine, they could have stopped the same or so reduced the speed thereof as to avoid a collision with said team, you will find for the plaintiff, even though you may believe that the said David Magar was guilty of contributory negligence in the manner in which he approached and drove upon said crossing." This charge submits the issue of discovered peril. It makes it the duty of defendant's employes, if they saw David Magar driving toward said crossing, and it reasonably appeared to them that he would not stop before he reached said track, or could not pass over the same in time to avoid a collision with the train and said employes then failed to use all the means at hand, etc., they should find for plaintiff.

McAlester, the fireman, testified, when he first saw Magar the train was just opposite the section house, that Magar was either between the house track and main track or coming over the house track crossing and going south on Townsend Avenue towards town. "From the time I saw the man when we were up there by the section house until we got to the crossing I was just watching ahead and the man kept driving toward town, and as we approached the crossing I suppose we were thirty or thirty-five feet or maybe forty feet from the crossing and I saw that the man was going to drive up on the crossing and paid no attention to the train and I halloed at the engineer and he set the brake. I told him to 'bighole her.' That is a phrase we use in regard to the emergency brakes." On cross-examination he testified: "I was in a position to see Magar from the time I first saw him up to the time he was struck. I couldn't tell which way he was looking. I didn't see anything to indicate that he saw the train coming, only that he was driving toward the crossing that we were on. He was standing up in the wagon with his head turned toward town, the way he was driving. He never did turn his head toward the train. It was probably 400 feet from where I first saw him to the point where I told the engineer to 'bighole her' and sat there and looked at the man during the time that the engineer was running the 400 feet. The engine was 45 or 50 feet from the man when I told the engineer to apply the air in the emergency." Again he testified that the only thing in his (Magar's) conduct that indicated that he was not going to drive across the track was that he was driving very slow.

J. F. Robertson, the engineer, testified: "I saw Magar before he came on the track. He was about half way between the house track and the main line and the train was about half way between the section house and where he was hit. He then passed out of my sight as he was on the opposite side from me, I being on the right hand side of the engine. The next time I saw anything of the team or wagon I saw

the end of the wagon tongue and the horse's head. We were then about 60 feet. I then threw the brake into the emergency and about this time the fireman halloed to me and told me to bighole her." On cross examination he testified: "We were between the section house and the depot when I first saw the man. I might have been three or four hundred feet away from the team when I first saw them, and the next time I saw the team I was about 60 feet away. I don't know how far I went from the time I first saw the team until it passed out of my sight, being on the right hand side of the engine you would have to be pretty close to the crossing to see anybody coming over it. The further away I was the better I could see him. I was about three or four hundred feet away from the crossing when I first saw them and he was in between the tracks. My attention was then directed ahead to the platform and I did not pay any attention to anything else. I didn't notice whether he had his head turned away from me or not and I never said anything to the fireman about it. The train was equipped with air and everything was in proper condition and in good working order." He further testified that he had reduced the speed of the train and that it was running about 12 or 15 miles per hour.

Plaintiff introduced expert testimony that a train running 12 or 13 miles per hour, under the conditions shown to exist in the running of the train at the time Magar was struck, could with an engine properly equipped with air, and in proper working order, have been stopped within forty feet. There was other testimony by defendant that it could be stopped within 100 feet. The testimony of both the fireman and engineer shows that at the time they first saw Magar he was between the house track and the main track driving in a walk towards the main track looking straight ahead. It is 60 feet between these tracks and it must have been apparent to the engineer and fireman that Magar had not discovered the approaching train and was in the act of driving on the main track. The evidence indicates that he was watching the engine which had been doing the switching on the passing track, but was then standing on that track in a northeasterly direction from him. The evidence shows that the engineer and fireman saw Magar in a perilous position in time for the engineer with the use of the means at his command to have stopped the train before it struck the team driven by Magar.

It is held that a charge that if defendant saw plaintiff and knew he was in peril, *or by the use of ordinary diligence* they could have discovered his peril in time to prevent the injury and failed to use the means within their power to avoid the danger, then the railroad would be liable for the injury caused thereby, while erroneous, does not constitute reversible error if the fact is undisputed that the employes operating the engine did discover him and knew of his peril. Missouri, K. & T. Ry. v. Magee, 92 Texas, 616. The facts are quite similar to those recently passed upon by the Supreme Court in the case of Houston & Texas Cent. Ry. Co. v. Finn, 101 Texas, 511. In that case, as in this, the plaintiff was between two railroad tracks when discovered by the employes of the company operating one of its trains and it seems was about to enter upon the track. Seeing steam issuing from an engine of an approaching train he swerved from his course and approached the

other track when he was struck by a box car which was being pro-
pelled backwards on that track. A judgment based upon discovered
peril was sustained. In our opinion, under the undisputed facts, the
employes of defendant saw David Magar and the team he was driving
in peril in time by the use of the means in their power to have stopped
the train in time to have avoided striking his team and wagon.

Again, it is contended that this charge is erroneous, in that it instructs
the jury that it was the duty of employes of the defendant to use all the
means they had at hand to stop the engine and prevent a collision, when
under the law they were only required to exercise ordinary care by the
use of means they had at hand to stop the train or slacken the speed. If
the persons operating the engine saw Magar in a perilous position, the
duty was imposed upon them to use every means within their power,
consistent with the safety of the engine, to avoid striking him, and a
failure to do so would render appellant liable, notwithstanding, Magar
may have been guilty of contributory negligence in driving on the track.
Texas & P. Ry. Co.. v. Breadow, 90 Texas, 26. Such, in effect, is the
care imposed on the defendant by the charge and the charge is not sub-
ject to the criticism made by appellant.

The second, third and fourth special instructions requested by appel-
lant, the refusal of which is made the basis of the fourth assignment,
are subject to the criticism that they are on the weight of evidence; in
so far as they announce correct propositions of law they are embraced
in the court's charge.

The sixth paragraph of the court's charge is assailed as erroneous.
This paragraph is as follows: "If you believe from the evidence that
on said occasion defendant's locomotive was being operated at a rate
of speed in excess of seven miles an hour, as it approached said cross-
ing and while it was within the corporate limits of said town, and if
you further believe from the evidence that in so running such train at
said rate of speed, if such train was so run, defendant, its servants or
agents in charge of and propelling said locomotive, were guilty of negli-
gence, and that such negligence, if any, was the direct and proximate
cause of the killing of plaintiff's horses, or if you believe from the evi-
dence that defendant's employes in charge of and operating said train,
failed, as said train approached said Townsend Avenue crossing, to
keep a proper lookout for persons on the crossing of said avenue, and
you further believe from the evidence that in such failure, if any there
was, said employes were guilty of negligence and that such negligence,
if any, was the direct and proximate cause of the killing of plaintiff's
horses, then in either of these events you will find for the plaintiff, un-
less you find for the defendant under the instructions hereinafter given
you."

It is contended that this charge is upon the weight of the evidence
in that it calls special attention of the jury to the operation of said train
at a rate of speed exceeding seven miles per hour and eliminated the
question of contributory negligence on the part of David Magar. This
criticism is without merit. The undisputed evidence showed that the
collision occurred within the corporate limits of the town of Ada and
that there was at the time a valid ordinance prohibiting the running of
a train or an engine at a greater rate of speed than seven miles an hour

within the corporate limits of said town. The charge of the court submitted to the jury the issue of negligence or not in running the train at a greater rate of speed than seven miles per hour instead of charging them, as he was authorized to do, that running the train at a greater rate of speed than seven miles per hour within the corporate limits would constitute negligence as a matter of law. The charge in this respect was more favorable to appellant than it was entitled to under the law.

Again, it is insisted that this paragraph of the charge is upon a phase of the case not supported by the evidence because the undisputed testimony shows that said Magar was seen by the operatives of said train; that said operatives were keeping a lookout; and, further, that it eliminates the question of contributory negligence on the part of said Magar. We do not concur in this contention. Whether or not the employes operating the train kept a proper lookout was a question of fact for the determination of the jury, and this issue was properly submitted to the jury by the court in the charge complained of. Said charge does not eliminate the question of contributory negligence on the part of said Magar, but expressly states that the jury will find for the plaintiff, "unless they find for defendant under instructions hereinafter given you," and in the eighth instruction thereinafter given, the question of the contributory negligence of Magar is submitted to the jury.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*