## St. Louis Southwestern Railway Company of Texas v. N. J. McArthur.

### Decided January 14, 1903.

**1.—Libel—Proving Truth.**

A statement warning the public that plaintiff, who was soliciting advertisements to be published with the folders of a railway, had no connection with the company, and that it did not propose to issue such folders, was not held to have been proven true, where plaintiff, whose account was accepted by the jury, had testified that he had a contract with the company to place within and circulate with its folders certain printed matter descriptive of towns within its territory.

**2.—Libel—Privileged Communication—Charge.**

A communication warning the public that plaintiff had no connection with defendant, was not absolutely, but only conditionally privileged. A requested charge that it was privileged, ignoring the question of good faith in its publication, was properly refused, and was insufficient to make the failure to submit the issue as to its qualified privilege error.

**3.—Contract—Consideration—Libel.**

A contract to insert in a publication matter to be prepared and furnished by another, was not, it seems, without consideration, though nothing was paid for the privilege. But, if not a binding contract, that fact did not justify the publication of a statement amounting to the charge that the party, in acting on such gratuitous agreement, was a swindler in soliciting advertisements to be inserted in the matter he expected to so publish.

**4.—Libel—Falsity of Charge.**

A requested instruction that defendant was not guilty of libel if the charge published was true, was properly refused where the general charge authorized recovery only in case of its falsity.

**5.—Issues—Failure to Submit.**

Failure to submit a matter of defense is not ground for reversal unless a charge submitting it was requested or the record shows that, if requested, it would have been refused.

**6.—Libel—Exemplary Damages—Corporation—Malice—Act of General Officer.**

A corporation is liable in exemplary damages for a malicious libel by a superior officer representing it in its corporate capacity; and the general passenger and ticket agent of a railway is such an officer.

**7.—Malice—Evidence.**

Conduct considered and held to furnish some evidence of express malice in the publication of a libel by an officer of a corporation.

**8.—Bills of Exception.**

Exceptions to rulings on admissibility of testimony can not be considered where the bills are embraced in a statement of facts filed after adjournment of the term.

Appeal from the District Court of McLennan. Tried below before Hon. Marshall Surratt.

Certified questions answered by the Supreme Court in this case appear in its report in 96 Texas, 65.

*E. B. Perkins* and *Clark & Bolinger,* for appellant.

*Eugene Williams,* for appellee.

KEY, Associate Justice.—This is a libel suit, resulting in a verdict and judgment for the plaintiff for $500 actual and $1250 exemplary damages, and the defendant railway company has appealed.  The alleged libel reads as follows:

"Cotton Belt Route.—St. Louis Southwestern Railway Company, Office of General Passenger and Ticket Agent.  St. Louis, April 21, 1897.—Daily Times, Waco, Texas:  I understand from newspaper clippings that a Mr. H. T. Staiti and Mr. N. J. McArthur are traveling around through Arkansas & Texas, representing themselves as being connected with the Cotton Belt Route, as special advertising agents, claiming that the Cotton Belt Route proposes to issue a folder descriptive of the territory, and that they are soliciting advertisements and writeups for this folder in the name of the Cotton Belt Route.

"This is to advise that the gentlemen referred to have no connection whatever with this company.  This company does not propose to issue any such folder as intimated by them, and disclaims any responsibility whatever for any of their acts in such matter.  Please notify the public accordingly.

"E. W. Le Baume, G. P. & T. A."

This document was published by the defendant in the Times-Herald at Waco, and in several other newspapers in the State.

The first assignment of error reads as follows:  "Verdict of the jury is contrary to the evidence, and is not supported by the evidence in this: That the undisputed testimony, including the statements and admissions of the plaintiff himself, showed that the publication complained of was true in every respect, in substance and in fact, and the same constituted no libel, and the jury should have found a verdict for the defendant on this issue."

We overrule this assignment, because the plaintiff's testimony warranted a finding to the effect that he had a valid contract with the defendant, by which the latter obligated itself to place within folders issued by it, certain printed matter, to be prepared by the plaintiff, descriptive of towns in the territory along and tributary to the defendant's railroad, and to circulate said printed matter with said folders.  This being the case, the undisputed testimony does not show that the publication complained of was true in every respect, as stated in the assignment of error.  On the contrary, giving credence to the testimony of the plaintiff, as the jury doubtless did, the statement that the plaintiff had no connection whatever with the defendant company, was untrue and misleading, and the statement that it did not propose to issue any such folder was also misleading.  And the publication, considered as a whole, was calculated to produce in the minds of its readers a belief that the plaintiff was attempting to cheat, swindle and defraud the public.

The second assignment of error complains of the verdict upon the

ground that the publication was privileged, the contention being that it was made for the protection of the defendant's interests and that there was no evidence of express malice. The court did not submit to the jury the. question of privileged communication, and the only instruction requested on that subject declared, as a matter of law, that the communication was privileged, and that the plaintiff could not recover, unless the jury found that the publication was made with express malice.

The publication was not absolutely privileged, and whether or not it fell within the class denominated "qualifiedly or conditionally privileged," among other considerations, depended upon whether it was made either upon express malice or in bad faith. If made in bad faith, though not upon express malice, it was not a privileged communication; and as the instruction requested on that subject omitted the question of bad faith, it was properly refused. Davis v. Wells, 25 Texas Civ. App., 155. Therefore, the issue of privileged communication not having been submitted to the jury, and the defendant not having requested a correct instruction on that subject, we hold that it can not complain of the verdict upon that ground.

Nor can we sustain the contention asserted under the third assignment, to the effect that the contract between the plaintiff and defendant was without consideration. But, if such were the fact, it would not necessarily follow that the publication was not libelous. If, in the absence of a binding contract to circulate the printed matter which the plaintiff was preparing, the defendant voluntarily promised so to do, and induced the plaintiff to pursue the course which the testimony shows he did pursue, the defendant had no right to denounce him as a swindler.

The charge of the court required the jury to find that the publication was false before they could find for the plaintiff, and this rendered it unnecessary to give the defendant's special charge to find for it, if the publication was true. And therefore the fourth assignment is overruled. Railway Co. v. Milam, 1 Texas Ct. Rep., 453.

The sixth assignment complains of the charge of the court because it did not cover the question of privileged communication. On that issue we think the burden of proof rested upon the defendant; and we understand the rule to be that when the court fails to submit a particular matter of defense, and the defendant fails to ask a proper instruction on that subject, he is not in a position to complain, unless the record indicates that the court would have refused to give a proper charge on the subject, if it had been requested.

The seventh assignment complains of the verdict for exemplary damages, upon the ground that the evidence failed to show malice, and failed to show that the defendant had ratified any malicious act of its agent, who caused the publication to be made. The evidence tending to show express malice may not be strong, but we can not say that there was no testimony tending to establish that fact. The arbitrary action

of the defendant's agent, Le Baume, in refusing to answer the plaintiff's letters denying charges made against him and explaining what he was doing, and the conduct of the agent in proceeding at once to make the publication complained of, tended to show gross indifference to the plaintiff's rights and the perpetration of a wanton if not willful wrong.

E. W. Le Baume, who authorized and instigated the publication complained of, was the defendant's general passenger and ticket agent; and, this being the case, we hold that it was unnecessary to show that the defendant had ratified his conduct, in order to render it liable for exemplary damages.

In Western Union Telegraph Co. v. Brown, 58 Texas, 174, it is said: "It is now the settled law of this State that, to make a corporation liable for exemplary damages, the 'fraud, malice, gross negligence or oppression' which must authorize and justify the same, must have been committed by the corporation itself, or some superior officer representing it in its corporate capacity; or, if committed by a subordinate servant or agent, the act must have been either previously authorized, or subsequently ratified or approved by the company or such superior officer after knowledge of the facts."

The doctrine there announced recognizes the rule of original liability of a corporation for punitive damages when a malicious act is done by a superior officer representing it in its corporate capacity; and draws the distinction between superior officers and subordinate servants and agents, and holds that the malicious conduct of the latter must have been authorized or ratified by the corporation before it can be held liable therefor.

In our opinion, Le Baume was not a subordinate servant or agent, but was a general officer, representing the corporation in its corporate capacity. And therefore the latter is responsible for his malicious conduct, although the same may not have been either authorized or ratified by the corporation. For an instructive discussion on the subject of the liability of corporations for exemplary damages, see Thompson on the Law of Corporations, vol. 5, secs. 6383 to 6395.

The other assignments of error relate to the action of the court in ruling upon the admissibility of testimony; but as the exceptions thereto are embodied in the statement of facts, which was filed after the court had adjourned for the term, the assignments referred to can not be considered. Dist. Court Rule 56; Howard v. Mayor of Houston, 59 Texas, 76; Tom v. Sayers, 64 Texas, 339; Ivey v. Williams, 78 Texas, 685; Schaub v. Brewing Co., 80 Texas, 634.

After giving the case careful consideration, our conclusion is that no reversible error has been presented and the judgment will be affirmed.

*Affirmed.*

Writ of error refused.