GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY V.
F. E. WHISENHUNT.

Decided May 18, 1904.

**1.—Defective Tools—Assumed Risk.**

The trial court would not have been warranted, under the evidence in this case, in assuming as a matter of law that plaintiff, a machinist's helper of three months' experience, knew that a brass punch was liable to sliver and break off under blows from a hammer, or that the punch given plaintiff by the machinist had been subjected to long usage under the hammer thus rendering it particularly liable to sliver. The helper did not assume the risks incident to such danger.

ON MOTION FOR REHEARING.

**2.—Machinist and Helper—Vice-Principal—Fellow Servants.**

The fact that a machinist and his helper both labored at a certain piece of work, but only one at a time, did not present the case of a vice-principal doing a particular piece of work in such a manner as to constitute his acts for the time being those of a fellow servant, the helper receiving his injuries while the machinist was standing some distance off and not engaged in the same piece of work.

Appeal from the District Court of El Paso. Tried below before Hon. J. M. Goggin.

*Baker, Botts, Parker & Garwood* and *Beall & Kemp,* for appellant.

*Patterson & Buckler,* for appellee.

JAMES, CHIEF JUSTICE.—The action was brought by appellee for damages for the loss of an eye. He alleged he was a machinist's helper in defendant's machine shops; that defendant was negligent in supplying him with a piece of brass for use as a punch which he used in driving brass out of a driving-wheel box by means of a hammer; that it was unfit for the purpose; that he had just commenced to drive said brass punch in when a piece flew off of it on account of its being of very friable nature and easily broken, and struck him in his right eye, putting it out; that he did not know at the time that the use of such a piece of brass for such a purpose was dangerous, and that he was not warned nor cautioned about the use of such material for a punch, or about the danger attending its use.

The verdict was for plaintiff for $2375. The assignments of error all relate to the question of assumed risk. The propositions are as follows:

"(1) When the servants selects the implement, a simple tool, to be used by him, and it is obviously defective or unsuited to the work or he knows it to be so, he assumes the risk of using such tool or instrument.

"(2) When an employe of at least three months' experience working in metal of which an implement of his own selection is made, and which instrument he knows to be unsuitable for his work, is injured by reason of his using such implement, he must be held to have assumed the

risk of using such implement and can not recover if he sustains injury arising from its defects.

"(3)    Where as in this instance the servant handles an implement, the defects and dangers of which are as apparent to him as to the master, he is charged with knowledge of such defects and dangers and assumes them."

The judgment being attacked for no other cause than as indicated by the above propositions, we need only examine the testimony to determine whether or not there was evidence warranting the court in submitting to the jury the question of assumed risk in the use of the brass punch from which the fragment came which caused plaintiff's injury. We must assume that there were no errors in the charge which submitted the issue of defendant's negligence in connection with plaintiff's use of the brass punch, and no error in submitting the issue of assumed risk except that the evidence was such as made its use a case of assumed risk by plaintiff as a matter of law.

There was testimony as follows: Plaintiff had been working there in the capacity of machinist's helper for three months, the work of driving brass out of driving boxes having been his chief work, and he had never previously worked for a railroad company. There was evidence that he was under the direction of the machinist in doing his work. Up to the previous day the kind of punch used was made of wrought iron, which broke and went to the blacksmith shop for repair. Plaintiff testified that after the iron punch broke, on the day before this accident, the machinist with whom he was working as helper brought this piece of brass and said, "We will use this," and we used it that evening. Plaintiff had never used it before. They went to work with it at 7 o'clock the next morning, using it continuously, and at 9 the accident occurred. He testified also that he did not know that brass was liable to split off or sliver. Kersey, appellant's foreman, testified that brass is somewhat liable to break after being used for a while; it might break after being hammered considerably, after being flattened out considerably, after long usage under the hammer, by reason of pounding the metal together it slivers. Brass is somewhat liable to sliver off, break off, small portions of it. You can not tell by looking at iron or steel or brass whether it is going to sliver at the time. This slivering off is on account of the granulation and the constant use of the metal producing a change, and the metal has a tendency to assume its original condition and form into grains, or pieces, and these pieces will separate. They separate on the outside by the constant hammering of the material and sometimes they will fly off in pieces, either iron, steel or brass.

Cregan, the machinist of whom plaintiff was the helper, testified that the punch was an old driving brass; that it was an old piece of brass and had been used as a punch before. If it should be said that plaintiff knew that any metal was apt to split or sliver after long usage under the hammer, still the evidence here does not make it appear, at least not

conclusively, that he knew this implement had been subjected to such use as would make it apt to sliver.

This testimony being in the case, we are of opinion that the court would not have been warranted in assuming, as we are now asked to do, that plaintiff either knew while using this brass implement, the danger that was present in using it, or that he necessarily must have known such danger, which is essential to assumed risk. Missouri K. & T. Ry. Co. v. Hannig, 91 Texas, 351; Texas & N. O. Ry. Co. v. Bingle, 91 Texas, 287; De La Vergne R. M. Co. v. Stahl, 24 Texas Civ. App., 471, 60 S. W. Rep., 319.

*Affirmed.*

ON MOTION FOR REHEARING.

The only grounds of the motion which we deem necessary to discuss are those which insist that the testimony did not show any act of negligence on the part of defendant, and that Cregan, whose helper plaintiff was, was in reference to the cause of plaintiff's injury the fellow servant.

As stated in the opinion on file, there was evidence that plaintiff was working under the direction and orders of Cregan. Plaintiff testified that most of the time they worked together in this business of driving brass out of the driving wheels. It seems from the testimony of both of them that one would work at a time. "Sometimes I would hit and sometimes Cregan would hit." The morning plaintiff was hurt he testified he had used the hammer on this piece of brass from 7 until 9. Cregan had used it the day before, and so had he. The effect of the testimony is that they worked with it separately. Cregan testified that at the time plaintiff was hurt he was engaged in driving the punch and he, Cregan, was standing off some distance. If this evidence be true, Cregan was not engaged at the time in the work in which plaintiff was hurt. Nor was plaintiff hurt by any act which Cregan was doing at the time. The facts do not present the case of a servant and his vice-principal doing a particular work together, in such manner as to make the acts of the vice-principal, for the time being, those of a fellow servant. The negligence for which the recovery was had consisted in Cregan's providing this brass punch, the use of which he directed. In this respect the evidence was sufficient to show that he acted in the capacity of vice-principal.

We have written this in deference to appellant's theory that the state of the evidence as to Cregan's relation to plaintiff ought to necessitate a reversal, although the assignments of error raise the question of assumed risk only.

The motion is overruled.

*Overruled.*

Writ of error refused.