FORT WORTH ELEVATORS COMPANY V.
MRS. MARY LEE RUSSELL, ET AL.

No. 5735.   Decided March 14, 1934.
(70 S. W., 2d Series, 397.)

130

*Black & Graves,* of Austin, *Cantey, Hanger & McMahon, R. K. Hanger,* and *Warren Scarborough,* all of Fort Worth, for plaintiff in error.

The Workmen's Compensation Act was not effective to render unavailable, in a case like this, the defense of contributory negligence and other common law defenses. McDonald v. International & G. N. R. R. Co., 86 Texas, 1, 12; Ball v. Youngblood, 252 S. W., 872; Trinity Co. Lbr. Co. v. Ocean Acc. & Guar. Corp., 228 S. W., 114; City of Tyler v. Texas Emp. Ins. Assn., 288 S. W., 409.

To hold corporation liable for the acts of its servants, it must be shown that said acts were either authorized or ratified. Connor v. Sewell, 90 Texas, 275; Little Sandy Hunting Club v. Berry, 194 S. W., 1161; Hays v. Houston & G. N. Ry. Co., 46 Texas, 272; Erie Telegraph Co. v. Kennedy, 80 Texas, 71; Sullivan-Sanford Lbr. Co. v. Cooper, 105 Texas, 21, 142 S. W., 1168.

*Houtchens & Houtchens,* and *Clark & Clark,* all of Fort Worth, for defendants in error.

The defenses of proximate cause, etc., were not available in a suit asking for recovery because of gross negligence only. Magnolia Petroleum Co. v Ford, 14 S. W. (2d) 97; Quinn v. Glenn Lbr. Co., 103 Texas, 253, 126 S. W., 2.

On the right to introduce evidence as to incompetency of employees. Galveston, H. & S. A. Ry. Co. v. Eckels, 60 S. W., 830; International & G. N. Ry. Co. v. Garcia, 70 Texas, 207, 7 S. W., 802; Galveston H. & S. A. Ry. Co. v. Henning, 39 S. W., 302; affirmed, 90 Texas, 656, 40 S. W., 392; Gulf, C. & S. F. Ry. Co. v. Hays, 89 S. W., 29.

MR. CHIEF JUSTICE CURETON delivered the opinion of the Court.

This case is one of three heard by the Supreme Court and both sections of the Commission of Appeals, involving the liability of corporations for exemplary damages. The case of the Morton Salt Company v. Nona Wells (post p. 151) involves the liability of the company in punitive damages for death of a servant while operating a defective machine, and that of Southwestern Gas & Electric Company (post p. 157) for oppressive conduct in cutting off the current from a private residence. Separate opinions have been prepared, but since the cases were heard together, the purpose of this opinion is to dispose of the basic question in each suit.

In the instant case the Fort Worth Elevators Company, a corporation, owned and operated two grain elevator plants, in Fort Worth, at one of which, known as the "Katy Plant," occurred the accident which resulted in the death of John T. Russell, an employee. The Company carried Workmen's Compensation Insurance, and the insurance carrier is paying compensation as provided by law.

This suit was filed by the wife and children of the deceased for *exemplary damages only*, under the Constitution and Statutes, who upon trial obtained judgment therefor, which on appeal was affirmed. (28 S. W. (2d) 320.) The case is before us by writ of error.

The "Katy Plant" of the Elevators Company was a large one, consisting of some 215 storage bins capable of storing three and one-half million bushels of grain; a head house; offices, loading and unloading dock; railroad or switch tracks; and machinery necessary in the operation of the plant in loading and unloading grain on or from railway cars. A part of the machinery was an electric power machine or winch, used for placing or spotting cars for loading and unloading purposes. This machine was operated by a control switch, and at the time of the accident one F. D. Walker, in the employ of the Company, was actually operating it. Russell, the deceased, had gone between the car to be spotted and another standing on the same track, to adjust the coupler of one of the cars. Walker threw the control switch and caused the cars to move together, with the result that Russell was caught and received injuries which resulted in his death.

The jury found, in answer to the special issues submitted in the court's main charge, that:

(a) Walker was guilty of gross negligence in turning on the power that pulled the cars together and killed Russell;

(b) That Walker had authority to control in his own disicretion the matter of spotting the cars, and to control, within his own judgment, the work of the other men there engaged with him;

(c) That prior and up to the time Russell was hurt, Walker was of a reckless and careless disposition in his work;

(d) That Pettijohn, the superintendent of the plant, knew of such disposition of Walker prior to the time that Russell was hurt; and

(e) Was guilty of *gross negligence* in having Walker in defendant's employ.

The basic defense of the plaintiff in error is stated in its

First Proposition under the 19th Assignment in the Application, as follows:

"A verdict for the defendant should have been instructed because the evidence was insufficient as a matter of law to show that either Walker or Pettijohn, as employees of the defendant corporation, bore such relationship to said corporation as to render it responsible in exemplary or punitive damages for any act they may have committed. There is no evidence that any corporate officer or any person having authority to bind the defendant in its corporate capacity was guilty of any such conduct as would furnish a basis for an award of exemplary damages."

The Elevators Company was a corporation, with a Board of Directors and the usual corporate officers. C. H. Pettijohn, the superintendent of the plant where and when the accident occurred, was selected as such at a meeting of the Company's officers and directors.

■ The opinion of the Court of Civil Appeals sets out the evidence quite fully as to the authority and powers of Mr. Pettijohn, and this, together with the record, which we have read, leaves no room for doubt that as general superintendent of the plaintiff in error, at its "Katy Plant," where the accident involved occurred, he was in truth and in fact a managing official and *alter ego* of the plaintiff in error. It is plain that the operation of the plant, a separate and distinct department or division of the Company's business, was placed in his hands as a managing officer, with power to perform every corporate act, delegable and nondelegable, relevant thereto, which could have been performed by the board of directors or other officers if personally present. He not only was empowered to operate the plant in the usual sense, but he had authority to make every provision for its safe operation, comprehended by the general authority conferred upon him. He could employ and discharge servants; appoint and discharge foremen; could determine the fitness of all such servants and appointees, define their duties, fix their wages, and generally determine and manage the personnel of the elevator plant, as well as the actual operation of its machinery and storage facilities. The power conferred upon Pettijohn as superintendent was of such comprehensive and general character as to plainly make him its *alter ego* or vice principal, and *all of his acts within the limits of his authority, including the employment and retention of Walker, were the acts of the corporation.*

As Pettijohn was a *corporate officer* selected by the Com-

pany's board of directors, with power to manage a distinct department of its business in every essential respect, his acts in line of duty as stated above were plainly those of a *vice principal* for the negligent performance of which the Elevators Company is liable. San Antonio & A. P. Ry. Co. v. Grier, 20 Texas Civ. App., 138, 49 S. W., 148; St. Louis, S. W. Ry. Co. v. McArthur, 31 Texas Civ. App., 305, 72 S. W., 76 (writ refused); 10 Texas Jurisprudence, Sec. 356; Central R. B. Co. v. Cheatham, 85 Ala., 292, 4 So., 828, 7 Am. St. Rep., 48; Denver & R. .G. R. Co. v. Harris, 122 U. S., 597, 610; Fletcher's Cyclopedia of Corporations, Vol. 10, Sec. 4907, and authorities *post;* 39 Corpus Juris, Sec. **702, p. 587.**

We are equally certain that, regardless of Pettijohn's status as a *corporate officer,* his *position* as a superintendent to whom had been confided the management of a department or division of the company's business, viz., the elevator properties known as the "Katy Plant," made him a *"vice principal"* in the sense that the Company is liable for his negligence.

Authorities supra; Cooley on Torts (3d ed.), Vol. 2, pp. 1161 to 1163; 10 Texas Jurisprudence, p. 1022, sec. 356, and cases cited in the notes, p. 981, sec. 325; "Summary of (Texas) Decisions," Labatt on Master and Servant (2d ed.), Vol. 4, pp. 4402, 4403; 18 Ruling Case Law, pp. 748, 750, secs. 218, 219, and case cited in the notes; 39 Corpus Juris, p. 585, secs. 702, 703, and cases cited in the notes; Commerce Cotton Oil Co. v. Camp, 105 Texas, 130, 145 S. W., 902; St. Louis, S. W. Ry. Co. v. McArthur, 31 Texas Civ. App., 205, 72 S. W., 76 (writ refused); Roberts v. Fielder Salt Works, 72 S. W., 618; Toledo, etc., R. R. Co. v. Rodriguez, 47 Ill., 188, 95 Am. Dec., 484; Granconia-Nashville Lbr. Co. v. Saline Development Co., 118 Ark., 192, 176 S. W., 129; Mullan v. P., etc., S. S. Co., 78 Pa., 25, 21 Am. Rep., 2; Minneapolis v. Lundin, 58 Fed., 525, 527; Crane v. Bennett, 177 N. Y., 106, 101 Am. St. Rep., 722, 69 N. E., 274; Labatt on Master and Servant (2d ed.), Vol. 4, secs. 1453, 1455, 1456, 1458, 1460, 1461, 1462, 1463, and the many cases cited in the notes; Baltimore & O. R. Co. v. Baugh, 149 U. S., 368; Brickner v. N. Y. C. R. Co., 2 Lans., 506 (afd. 49 N. Y., 672); Corcoran v. Holbrook, 59 N. Y., 517, 17 Am. Rep., 369; Harrison v. Detroit, L. & N. R. Co., 79 Mich., 409, 44 N. W., 1034, 7 A. L. R., 623; Hamelin v. Malster, 57 Md., 287; Schroeder v. Flint, P. M. R. Co., 103 Mich., 213, 61 N. W., 663, 29 L. R. A., 321; Brothers v. Carter, 52 Mo., 372, 14 Am. Rep., 424; Mattise v. Consumers Ice Mfg. Co., 46 La. Ann., 1535, 16 So., 400, 49 Am. St. Rep., 356; Mirick v. Morton, 62 Kan., 870, 64 Pac., 609; Colorado Mill & Elev. Co. v. Mitchell, 26 Colo.,

284, 58 Pac., 28; Washburn v. Nashville & C. R. Co., 3 Head (Tenn.) 638, 75 Am. Dec., 784; see also "Summary of Decisions," Labatt's Master and Servant (2d ed.), Vol. 4, pp. 4333 to 4410.

As said by Thompson on Corporations, Vol. 7 (3d ed.) sec. 5479:

"A corporation which has delegated to one of its agents the power and duty of appointing and removing employees makes such an agent a *vice principal* and is liable to one of its employees for an injury received by him through the negligence of another employee so appointed when the appointing agent has not used due care in selecting such employee, although the agent himself is possessed of competent skill and intelligence. *In such a case an officer or agent of a corporation who has charge of its business or of a particular branch of it is for all practical purposes regarded as the corporation itself.*" (Italics ours).

■ It is quite elementary that a corporation owes certain duties to its employees which can not be delegated to a servant, or rather, which, though actually delegated, the corporation itself remains responsible for the manner of their performance, no matter how carefully the servant has been selected; and the status of the agent, whether a mere servant or an officer, is of no consequence. Texas Jurisprudence, Vol. 10, p. 954, sec. 303; p. 1024, sec. 357; 18 Ruling Case Law, p. 730, sec. 206.

Among the absolute or nondelegable duties which the authorities recognize are the following:

First: The duty to provide rules and regulations for the safety of employees, and to warn them, under certain conditions, as to the hazards of their positions or employment. 18 Ruling Case Law, p. 734, sec. 208; p. 573, sec. 80; 39 Corpus Juris, p. 469, sec. 586; p. 474, sec. 589; p. 485, sec. 600; p. 486, sec. 602; p. 635, sec. 745; p. 631, sec. 742; International & G. N. R. Co. v. Hall, 78 Texas, 657, 15 S. W., 108; Missouri Pac. R. R. Co. v. McElyea, 71 Texas, 386, 9 S. W., 313; Galveston H. & S. A. Ry. Co. v. Smith, 76 Texas, 611, 615, 13 S. W., 562; 4 Labatt on Master and Servant (2d ed.) secs. 1504, 1508.

Second: The duty to furnish reasonably safe machinery or instrumentalities with which its servants are to labor. International & G. N. Ry. Co. v. Kernan, 78 Texas, 297, 14 S. W., 668; Texas & P. Ry. Co. v. O'Fiel, 78 Texas, 486, 488, 15 S. W., 33; Houston & T. C. Ry. Co. v. Marcelles, 59 Texas, 334, 338; Hines v. Flinn, 222 S. W., 679, 680; Quinn v. Glenn Lbr. Co., 103 Texas, 253, 126 S. W., 2; St. Louis & S. W. Ry. Co. v. Ewing,

222 S. W., 198; Galveston, H. & S. A. Ry. Co. v. Whisenhunt, 36 Texas Civ. App., 135, 81 S. W., 332; Santa Fe T. & L. P. Co. v. Collins, 198 S. W., 164; Terrell Comp. Co. v. Arrington, 48 S. W., 59; Missouri, K. & T. Ry. Co. v. Wise, 101 Texas, 459, 465, 109 S. W., 112; 2 Cooley on Torts (3d ed.), pp. 1161 to 1167; 39 Corpus Juris, p. 308, sec. 441; p. 322, sec. 445; 4 Labatt on Master and Servant (2d ed.), secs. 1496, 1497, p. 4461, sec. 1498, and cases cited in the notes; 18 Ruling Case Law, p. 737, sec. 210.

Third: The duty to furnish its servants with a reasonably safe place to work. Texas Co. v. Strange, 154 S. W., 327, 330; Missouri, K. & T. Ry. Co. v. Wise, 106 S. W., 465, 467; Gulf, C. & S. F. Ry. Co. v. Delaney, 22 Texas Civ. App., 427, 55 S. W., 538, 539; Gulf, C. & S. F. Ry. Co. v. Shearer, 1 Texas Civ. App., 343, 21 S. W., 133, 134; El Paso S. W. Ry. Co. v. Smith, 50 Texas Civ. App., 10, 108 S. W., 988, 995; S. W. S. P. Cement Co. v. Riser, 137, S. W., 1188; Missouri, K. & T. Ry. Co. v. Wise, 101 Texas, 459, 465, 109 S. W., 112; Cooley on Torts, supra; 39 Corpus Juris, p. 344, sec. 465; Labatt, supra, and notes; 18 Ruling Case Law, p. 735, sec. 209.

Fourth: The duty to exercise ordinary care to select careful and competent fellow servants or co-employees. Galveston, H. & S. A. Ry. Co. v. Sherwood, 67 S. W., 776, 779; Missouri, K. & T. Ry. Co. v. Wise, 101 Texas, 459, 465, 109 S. W., 112; Cooley on Torts, supra; 39 Corpus Juris, p. 526, sec. 631; Missouri P. Ry. Co. v. Day, 104 Texas, 237, 136 S. W., 435; Texas, etc., Ry. Co. v. Johnson, 89 Texas, 519, 35 S. W., 1042; 4 Labatt on Master and Servant (2d ed.), sec. 1502; 18 Ruling Case Law, p. 738, sec. 211.

We have heretofore shown that because Pettijohn was a *corporate officer* with authority to represent the Elevators Company in its corporate capacity, and *because as superintendent he was at the head of a separate department of the Company's business with the powers shown, he was the alter ego or vice principal of the Company,* and his acts in the performance of his duties were the acts of the corporation, for which it is answerable in damages.

■ We think it equally sound, under the authorities, *that since the selection and retention of Walker in the employ of the Elevators Company was the performance of a non delegable duty, his selection and retention by Pettijohn, regardless of the latter's official title or status otherwise as a corporate agent, must also be regarded as the act of the corporation, for which it is answerable.*

We are certain that the rules of law announced and conclusions stated above, as to the liability of the plaintiff in error for the acts of Pettijohn, would not be challenged if actual damages only were involved. We believe they apply, however, with equal force, and for like basic reasons, to actions for *exemplary damages.*

The principle of exemplary damages is of ancient origin, found not only in the Code of Hammurabi and the Hebrew Laws, but in the early Anglo-Saxon Jurisprudence, and has come down to us through the common law. 8 Ruling Case Law, p. 579, sec. 128, p 581, sec. 219; Sutherland on Damages (4th ed.), Vol. 2, sec. 392; Day v. Woodworth, 13 How., 371; Lakeshores, etc., R. Co. v. Prentice, 147 U. S., 101, 106; Coal Belt E. R. Co. v. Young, 126 Ill. App., 651; Canfield v. Chicago etc. R. Co., 59 Mo. App., 354; Wigmore's Sources of Ancient and Primitive Law, Chap. 21, pp. 512, 513; Code of Hammurabi, secs. 8 to 12, 106, 107, 112, 120, 265, as printed in Wigmore and Kocurek's Sources of Ancient and Primitive Law, p. 387; Prov. 6:1; Ex. 22:1 to 10; 2 Sam. 12:6; Luke 19:8, Lev. 6.2-5; Sutherland on Damages (4th ed.), Vol. 2, p. 1260, note 9; Mayer v. Frobe, 40 W. Va., 22 So., 58, 61.

■ Since the Constitution of the State recognizes this ancient principle of the common law, and expressly provides for recoveries of punitive damages against corporations, we should regard its importance and give the provision such a construction as will effectively protect society against the violation of personal rights and social order by corporations, the purposes for which such damages are now generally awarded against individuals. Thompson on Corporations (1st ed.), Vol. 5, sec. 6368; 6 Ruling Case Law, p. 50, sec. 45; 2 Sutherland on Damages, sec. 392, p. 1266; and authorities supra.

The State Constitution, Art. 16, Sec. 26, declares:

"Every person, *corporation, or* company *that may commit a homicide,* through wilful act, or omission, or *gross neglect, shall be responsible, in exemplary damages,* to the surviving husband, widow, heirs of his or her body, or such of them as there may be, without regard to any criminal proceeding that may or may not be had in relation to the homicide." (Italics ours).

Corporations can act only through agents of some character. 2 Texas Jurisprudence, p. 427, sec. 40; Thompson on Corporation (3 ed.), Vol. 2, sec. 1496; Baltimore & O. R. Co. v. Baugh, 149 U. S., 368.

When the Constitution declares that a corporation may be

legally liable for exemplary damages for death due to *"gross neglect,"* the meaning is that it may become liable because of the *gross negligence* of some agent of the corporate entity. The question then is, what agent? Is a corporation to be held legally liable for the *"gross neglect"* of all of its agents, or does liability arise only when the gross negligence is that of some one of a defined or limited class of agents? Different jurisdictions answer these questions differently.

There are, broadly speaking, three general rules as to the liability of corporations for exemplary damages. The first is that of nonliability which obtains in some jurisdictions. Some of the states, while rejecting the doctrine of exemplary damages, in form at least allow augmented damages for punitive conduct. Others repudiate the principle entirely, while still others disallow punitive damages where the act complained of amounts to the commission of crime. Thompson on Corporations (3d ed.), Vol. 7, sec. 5498; Labatt on Master and Servant, (2d ed.), Vol. 7, sec. 2554, p. 7843; Fletcher's Cyclopedia of Corporations, Vol. 10, sec. 4906, p. 493. However, in most jurisdictions, including Texas, exemplary damages are recoverable against corporations. Thompson on Corporations, supra, sec. 5497; Fletcher's Cyclopedia of Corporations (just cited), sec. 4906; Texas jurisprudence, Vol. 10, sec. 358; Vol. 13, sec. 139; Hays v. Houston & G. N. R. R., 46 Texas, pp. 272, 289; Constitution, Art. 16, sec. 26.

The second rule, sometimes called the rule of general liability, makes corporations liable under the doctrine of *respondeat superior,* and obtains in many (some 17) of the states, although in some states it is not uniformly applied to all classes of corporations. Thompson on Corporations (1st ed.), Vol. 5, secs. 6384, 6385, 6388; Sutherland on Damages (4th ed.), Vol. 2, secs. 410, 411; Thompson on Corporations (3d ed.), Vol. 7, sec. 5501; Labatt on Master and Servant (2d ed.), Vol. 7, secs. 2554, 2555.

The third rule, which has been adopted by the Supreme Court of the United States, and many (some 15) states also, is that of *exceptional liability,* stated in Fletcher's Cyclopedia of Corporations as follows:

"Other courts hold that to make the master liable in any case to exemplary damages for the fraud, malice, gross negligence, or oppression of the servant, it should be alleged and proven that the acts of the servant which constitute the fraud, malice, gross negligence, or oppression were committed by the direction or authority of the master, or that the master has ratified and adopted such acts as his own, or that he has par-

ticipated in them, or that the master has been guilty of negligence in the selection and employment of the servant whose acts constitute the fraud, malice, gross negligence, or oppression complained of." Fletcher's Cyclopedia of Corporations (Revised ed.), Vol. 10, p. 494, sec. 4906.

This rule is expressed in various forms by text writers and courts. Thompson on Corporations (1st ed.), Vol. 5, secs. 6384, 6385; (3d ed.), Vol. 7, secs. 5500, 5503, 5505; Sutherland on Damages (4th ed.), Vol. 2, sec. 410; Labatt on Master and Servant (2d ed.), secs. 2556 to 2561; and cases cited in the notes to the above texts.

It is quite unnecessary to discuss the history of the first rule referred to above, since it is apparent that it originated in the old common law rule that corporations were not liable for the torts of their agents, a doctrine long since repudiated in nearly all jurisdictions, including Texas. Fletcher's Cyclopedia of Corporations, Vol. 10, sec. 4877; 10 Texas Jurisprudence, sec. 355.

The second rule—that corporations are liable in punitive damages on the theory of *respondeat superior*—seems to be an outgrowth of the original conception of the purpose of exemplary damages—,that is, compensation in augmented amount for the injured party rather than as a punishment for the offender. Sedgwick on Damages (8th ed.), Vol. 1, secs. 347 to 351.

The third rule named above, that to warrant the recovery of exemplary damages the punitive act complained of must be the act of the offending corporation rather than of its ordinary servants or agents, is the result of an evolutionary development of the common law, a corollary of the judicial conception that such damages are for the purpose of protecting society by punishing the offender rather than as compensation for the injured party.

The rule that exemplary damages were to be awarded for *"examples"* sake or as a *punishment* was very easily established in this country. Sedgwick on Damages (8th ed.), Vol. 1, secs. 351, 352, and cases cited in the notes; Smith v. Sherwood, 2 Texas, 460; Graham v. Roder, 5 Texas, 141, 149; Cole v. Tucker, 6 Texas, 265.

In the case of The Amiable Nancy, 3 Wheaton (16 U. S.), 546, 4 L. Ed., 456, the Supreme Court of the United States, through Associate Justice Storey, approved the principle of exemplary damages but declined to permit recovery in that case because the punitive conduct was merely by the *servants* and *agents* of the owners of the vessel.

This case was decided in 1818, and the rule therein declared became the established one in all Federal Courts, the Supreme Court of the United States, and the basis of the rules declared in some fifteen of the states, including Texas. 7 Labatt on Master and Servant (2d ed.), sec. 2556, p. 7851; 10 Fletcher's Cyclopedia of Corporations, p. 454, notes; sec. 4906, p. 496; Lake Shore & M. S. Ry. Co. v. Prentice, 147 U. S., 101; Hays v. Houston & G. N. R. R. Co., 46 Texas, 272.

The second rule named above—that of *respondeat superior* —is said by some text writers to be supported by the weight of authority, and to be the more logical of the two rules we are now discussing. Fletcher's Cyclopedia, just cited; Thompson on Corporations (1st ed.), Vol. 5, secs. 6385, 6388. With this, however, other authorities do not agree. Sedgwick on Damages (8th ed.), Vol. 1, secs. 378, 380; Western Union Tel. Co. v. Brown, 58 Texas, 170.

However meritorious and logical the second rule, that of *respondeat superior,* may appear to some writers, the third, that of exceptional liability, described in the quotation from Mr. Fletcher, is the one which in *modified* terms has been adopted in Texas.

*Passenger cases:* Hays v. Houston & G. N. R. R. Co., 46 Texas, 272; Texas Trunk Ry. Co. v. Johnson, 75 Texas, 162; Arkansas Const. Co. v. Eugene, 20 Texas Civ. App., 601, 50 S. W., 376; Townsend v. T. & N. O. Ry. Co., 40 Texas Civ. App., 71, 88 S. W., 302; Dillingham v. Russell, 73 Texas, 47; Texas & N. O. Ry. Co. v. O'Connor, 201 S. W., 437; Texas & P. Ry. Co. v. Beezley, 46 Texas Civ. App., 108, 101 S. W., 1051; Galveston C. & S. F. Ry. Co. v. McFadden, 25 S. W., 451.

*Death Cases:* Houston & T. C. R. R. Co. v. Cowser, 57 Texas, 293; Winnt v. International & G. N. Ry. Co., 74 Texas, 32; McGown v. International & G. N. Ry. Co., 85 Texas, 289; Samples v. Pickering Lbr. Co., 291 S. W., 254; Houston & T. C. Ry. Co. v. Baker, 57 Texas, 419.

*Personal Injury Cases:* International & G. N. Ry. Co. v. Garcia, 70 Texas, 207; Galveston C. & S. F. Ry. Co. v. Moore, 69 Texas, 157; Texas & P. Ry. Co. v. Woodall, 2 Ct. of App. (Wilson), Civ. Cases, sec. 471.

*Property Cases:* Galveston C. & S. F. Ry. Co. v. Reed, 80 Texas, 362; Yarbrough v. Brookins, 294 S. W., 900; San Antonio & A. P. Ry. Co. v. Grier, 20 Texas Civ. App., 138, 49 S. W., 148.

*Telegraph Cases:* Western Union Tel. Co. v. Brown, 58 Texas, 170; Western Union Tel. Co. v. Landry, 108 S. W., 461.

*Fraud Cases:* Western C. P. & O. Co. v. Anderson, 97

Texas, 432; same case in Ct. of Civ. App., 45 Texas Civ. App., 513; Mutual Life Ins. Co. v. Hargus, 99 S. W., 580.

*Cases Involving Malice:* See Passenger cases above; Equitable Life A. Soc. v. Lester, 110 S. W., 499; Wortham-Carter P. Co. v. Littlepage, 223 S. W., 1043; Heidenheimer v. Sides, 67 Texas, 32; Tynburg & Co. v. Cohen, 67 Texas, 220; Lester v. Hawkins, 181 S. W., 481; Jacobs, B. & Co. v. Crum, 62 Texas, 401; Willis & Bro. v. McNeill, 57 Texas, 465; Thompson v. Bell, 32 S. W., 142.

The question of the punitive liability of a corporation for the acts of its agents first came before this Court in the case of Hays v. Houston & G. N. R. R. Co., 46 Texas, 272. The case was not one for homicide based on gross neglect, and arose prior to the incorporation of that provision in the Constitution in 1876. The opinion, by Associate Justice Gould, however, was delivered after the adoption of the Constitution of 1876, and makes reference to that document. The basis of the claim for exemplary damages was the wrongful act of a conductor in expelling Hays from a passenger train. In stating the rule as to when an action for exemplary damages could be maintained against a corporate defendant, Justice Gould, in part, said:

*"If the malicious act of its agent is ratified or adopted; if there is carelessness in the selection of employees or in the establishment of appropriate regulations; if, in short, the corporation, or their officers by whom it is controlled and represented, are guilty of some 'fraud, malice, gross negligence, or oppression'—the settled rules of law will hold it liable to exemplary damages, but, in our opinion not otherwise."* 46 Texas, 283, 284. (Italics ours).

Within the appropriate limits of an opinion we can not quote from the many cases in this State which approve the rule laid down in the Hays Case. We shall note some of them, however.

In the case of Houston & T. C. Ry. Co. v. Cowser, 57 Texas, 293:

"The suit was brought by Cowser and wife against the railroad company, to recover damages resulting to them because of the death of their son, William R. Cowser, Jr. It was alleged that the death of the latter on June 12, 1880, was caused by the gross negligence and carelessness of the agents, servants and employees of the railway company, in switching their cars. A demurrer of the railway company to those portions of the petition claiming exemplary damages was sustained * * *."

This action of the trial court was approved by this Court. Associate Justice Bonner in the opinion in part said:

"Exemplary damages are allowed only for the willful act, omission or gross negligence of the 'defendant' to the suit, *if a corporation, for the willful act, omission or gross negligence of one representing it in its corporate capacity, as a corporate officer, but not of a mere ordinary servant or agent.* * * *

"The above distinction between the liability of the principal for actual and for exemplary damages for the act or omission of the servant or agent, is founded upon natural justice, was recognized in Hays v. R. Co., 46 Texas, 272, and numerous other cases." (Italics ours).

In Winnt v. International & G. N. R. R. Co., 74 Texas, 32:

The action was brought by the surviving parent, for both actual and exemplary damages, alleged to have resulted by reason of the death of the plaintiff's son on the railroad's road.

This Court held that a demurrer was properly sustained to those allegations of the petition attempting to state actionable grounds for punitive damages. In part the opinion states:

"The averments of the petition are that the *servants and employees of the defendant* were grossly negligent and reckless in running and operating the train, in failing to give proper signals or keep a proper lookout, etc. The train is described also as being an extra train having an officer or officers of the defendant on board, but there are no allegations showing that willful act, omission, or gross neglect, of one representing the defendant in its corporate capacity as a corporate officer, nor are there any averments of an approval or ratification of the acts of the agents of defendant, which are generally held to be necessary to support a claim for exemplary damages against the principal arising out of the acts of the agent. International & G. N. Ry. v. Hays, 46 Texas, 272.

"The acts complained of are alleged to have been committed by those acting as its ordinary servants and employees. International & G. N. Ry. v. Hays, 46 Texas, 272; Houston & T. C. Ry. v. Cowser, supra."

In McGown v. International & G. N. Ry. Co., 85 Texas, 289:

The action was brought by McGown against the railroad company for both actual and exemplary damages for the death of his wife. * * * On the question of exemplary damages this Court said:

"Was the plaintiff entitled to exemplary damages? To justify such a recovery it must appear, that the death was due to 'willful act or omission or gross negligence *of the corporation itself, or of its officers; or, if the act or negligence was*

*that of a mere servant or employe, however willful or gross, that it was subsequently ratified by the corporation.* Rev. Stats., Arts. 2901; Railway v. McDonald, 75 Texas, 41." (Italics ours).

In the case of Dillingham, Receiver, v. Russell, 73 Texas, 47, not a death but a personal injury case, this Court in an opinion by Chief Justice Stayton followed the Hays case, supra. The action was brought by Russell for both actual and exemplary damages, for assault and battery made on him while a passenger by a train conductor. Verdict was for both actual and exemplary damages. On the question of exemplary damages the Court, speaking through Chief Justice Stayton, in part said:

"The last paragraph of the charge quoted was repeated in a subsequent charge. In those jurisdictions in which it is held that exemplary damages may be given against a corporation for injuries willfully or maliciously inflicted by its servants in all cases in which the willful or malicious act was one in the course of the business entrusted to the servant, whether the act be authorized or ratified by the corporation, the giving of the charge complained of would probably be deemed harmless if the acts complained of in this case can be said to have been in the line of the conductor's duties. In this State, however, that rule has not been adopted.

"In Mays v. Railroad Company, 46 Texas, 272, which was a case in which the act complained of might properly have been done in the course of the employment of the servant, it was said: *'If the malicious act of the agent is ratified or adopted; if there is carelessness in the selection of employes or in the establishment of regulations; if, in short, the corporation or its officers by whom it is controlled are guilty of some "fraud, malice, gross negligence, or oppression," the settled rules of law will hold it liable to exemplary damages, but in our opinion not otherwise.'* This ruling was followed in Railway Company v. Donahoe, 56 Texas, 162.

"We have no disposition to reopen the question in view of the conflict in authority." (Italics ours).

In Texas Trunk Ry Co. v. Johnson, 75 Texas, 159, recovery of both actual and exemplary damages was sought for personal injuries to a passenger, due to a derailment. Liability for actual damages was admitted, but for punitive damages denied. This Court held that a special charge informing the jury that if derailment was due to the speed of the train against the company's orders exemplary damages could not be

recovered, was erroneously refused. Chief Justice Stayton in part said:

"A master is liable for actual damages for an injury resulting from the negligence of his servant in the course of his employment, even though the act be in direct violation of the master's orders, but the same rule does not apply with reference to exemplary damages.

"*If appellant's railway could be operated with safety at the rate of speed prescribed by it for the regulation of employees, then an injury resulting from a violation of such orders can not be attributed to the gross negligence of appellant, nor to its indifference or disregard for the safety of passengers.*

"Such gross negligence, indifference, or disregard for the safety of passengers must exist to render the master liable for exemplary damages, and the charge requested should have been given."—75 Texas, 161. (Italics ours).

In the case of Samples v. Pickering Lumber Co., 291 S. W., 254, decided by the Court of Civil Appeals in 1927, the suit was for exemplary damages for wrongful death in a case where Workmen's Compensation had been previously allowed. A general demurrer was sustained to the petition.

The Court sustained the action of the trial court, and as reason therefor, in part, said:

"*In order for the plaintiff's petition in a case of this character to state a cause of action against the corporation, it is necessary that the petition show that the act or omission complained of as constituting gross negligence on the part of the agent, servant, or employe was directed by the corporation, or that he represented the corporation in its corporate capacity in some way, or that the corporation ratified in some binding manner the act or omission of the agent, servant, or employe.*" (Italics ours).

■ The Texas rule reduced to its simplest terms, and applied to a case of gross neglect, means that the default for which punitive damages may be recovered must be that of the corporation—*that the grossly negligent act must be the very act of the corporation itself;* or, if the act is that of a *mere servant or employee as such,* then it must have been previously authorized or subsequently must be approved by the corporation.

Our next inquiry will be as to what class, or classes, of corporate agents and servants, in so far as involved in the three cases before us, come within this rule in such manner as to make their corporate masters liable for exemplary damages.

Formerly corporations could not be held liable in damages for torts. This rule, however, has been abandoned, and such liability is now unquestionable. This liability arises out of the acts of two different classes of corporate agents, namely, servants and vice principals—one of whom is charged with and performs the duties of a servant, and the other exercises the power or performs the duties of a master.

■ Corporate liability for the negligent acts of a mere *servant or employee* rests upon the doctrine of *respondeat superior.* 18 Ruling Case Law, p. 786, sec. 247; 39 Corpus Juris, p. 1268, sec. 1451. The liability of the master for the negligent acts of his *vice principal* is placed upon very different grounds—namely, that the negligent acts of the *vice principal* are the *very acts of the corporation itself.* Hugo, Schmeltzer & Co. v. Paiz, 104 Texas, 563, 141 S. W., 518; Sweeney v. G. C. & S. F. Ry. Co., 84 Texas, 433, 19 S. W., 555; 18 Ruling Case Law, p. 743, sec. 215; Commerce Cotton O. Co. v. Camp, 105 Texas, 130, 133, 145 S. W., 902.

■ Using the term *"vice principal" as* embracing the four classes of corporate agents · heretofore referred to: (a) corporate officers; (b) those who have authority to employ, direct, and discharge servants of the master; (c) those engaged in the performance of nondelegable or absolute duties of the master; and (d) those to whom a master has confided the management of the whole or a department or division of his business, an examination of the authorities cited will disclose that the basic reason for holding a corporation liable in *actual damages* for the negligence of a *vice principal* is identical with the requirement for the recovery of *exemplary damages* for gross neglect—namely, that the act must be the *act of the corporation,* instead of the act of a servant. Hough v. Railway, 100 U. S., 213; Baltimore & O. R. Co. v. Baugh, 149 U. S., 368; Brickner v. N. Y. C. R. Co., 2 Lans. (N. Y.), 506; 18 Ruling Case Law, p. 743. sec. 215; Hugo, Schmeltzer & Co. v. Paiz, 104 Texas, 563; Sweeney v. G. C. & S. F. Ry. Co., 84 Texas, 433; William Miller & Sons v. Wayman, 157 S. W., 197 (writ refused); Coca-Cola Co. v. Williams, 209 S. W., 396 (Com. of App.); Aguinaga v. Medina Valley Irr. Co., 210 S. W., 515 (Com. of App.); Portland Cement Co. v. Bostillos, 216 S. W., 268; Missouri Pac. Ry. Co. v. Williams, 75 Texas, 4, and other authorities supra.

The authorities cited are all available, and we will not enlarge this opinion with quotations therefrom.

The case of Hough v. Texas & Pac. R. Co., 100 U. S., 213

(a Texas case which arose prior to the abolition of the fellow servant rule as to railways), states the reasons of the rule. This case is of particular interest here because *the action was for both actual and exemplary damages* for the negligence of the corporation's *vice principals.*

It should be borne in mind that the Death Statute involved in the vice principal cases cited is similar to the language employed in the constitutional provision here involved. In the one damages are recoverable only when the *negligent act is that of the corporation itself;* while in the other exemplary damages are recoverable only *when the corporation itself is grossly negligent.*

If in an action for actual damages for negligence the vice principal is to be regarded as the *alter ego* of the corporation, and his acts corporate acts, how can it be said that his grossly negligent acts are not also those of the corporation? If he represents the corporation when *negligent,* whom does he represent when *grossly negligent?* There can be but one logical answer, and that is, *he still represents the corporation;* provided, of course, the work in hand is within the duties delegated to him. Mr. Sedgwick, it seems to us, states the correct general rule, as follows:

"*A corporation is liable for exemplary damages for its own act, that is, for the act of its directors or other agents whose act is the act of the corporation. Thus gross negligence in hiring servants will subject a corporation to exemplary damages, and so will express authorization or ratification of the servant's acts.*" Sedgwick on Damages (8th ed.), Vol. 1, sec. 379.

If this logic is sound, then a corporation, in view of the general authorities previously cited, is responsible in punitive damages for the grossly negligent acts of a vice principal exercising the power and authority with which Pettijohn was clothed in this case. Aside from the logic of this conclusion, however, our appellate courts have held or stated that corporations are liable in exemplary damages for the punitive acts of their *vice principals.* Western C. P. & O. Co. v. Anderson, 97 Texas, 432, 79 S. W., 516; Emmerson T. & Co. v. Skidmore, 7 Texas Civ. App., 641, 25 S. W., 671; Cicero-Smith Lbr. Co. v. Denton, 16 S. W. (2d) 932; Western C. P. & O. Co. v. Anderson, 45 Texas Civ. App., 513, 101 S. W., 1061 (writ refused); St. Louis S. W. Ry. Co. v. McArthur, 72 S. W., 76 (writ refused); Wortham-Carter Pub. Co. v. Littlepage, 223 S. W., 1043; Gulf, C. & S. F. Ry. Co. v. Reed, 80 Texas, 362.

■ We have heretofore shown that there are certain nondelegable or absolute duties of the corporation which can not be assigned to a servant or employee so as to relieve the corporation of liability for their tortious performance, and that, regardless of the status of the agent who actually performs them, his acts are those of the corporation, and the latter is held liable in damages, actual and punitive. Against the soundness of this conclusion there can be no admissible argument. Moreover, it is supported by one of the basic cases in this State, that of International & G. N. R. R. Co. v. Hays, 46 Texas, 272, wherein this Court expressly declared that if a corporation was guilty of carelessness, (a) *"in the selection of employees,"* (b) *"or in the establishment of appropriate regulations,"* exemplary damages were recoverable. The duties named are nondelegable or absolute, and their speciñication is a clear recognition of the principle that this class of corporate duties can not be delegated in such manner as to relieve the corporation from punitive liability for their grossly negligent performance. See also the authorities supra, which follow the Hays case.

■ The insistence that a corporation can be held liable in exemplary damages *only* for the. torts of a *"superior officer representing it in its corporate capacity"* is, we think, without merit. Language in support of this view is to be found in Western Union Tel. Co. v. Brown, 58 Texas, 170; St. Louis S. W. Ry. Co. v. McArthur, 31 Texas Civ. App., 205, 72 S. W., 76. We are of the opinion, however, that the courts in these cases intended to follow the rule announced in the Hays and Cowser cases, supra, and that the language employed with reference to a corporate officer was an inaccurate statement of the rule from the Cowser case, wherein this Court said that punitive damages are recoverable against a corporation "for the willful act, omission or gross negligence of one representing it in its corporate capacity, *as a corporate officer,* but not of a mere ordinary servant or agent." (Italics ours). It is plain, we think, that the words *"as a corporate officer"* were not intended to mean that the tortious act *must* be committed by a *corporate officer;* but that what was meant was that the act complained of must be the act of the corporation, or of "one representing it in its corporate capacity"—citing as an example, "a *corporate officer."* Chronister Lbr. Co. v. Williams, 116 Texas, 207, 212, 288 S. W., 402. The erroneous expression used in the Western Union (58 Texas) and McArthur (31 Texas Civ. App., 72 S. W.) cases has been used in other decisions. Hence the necessity of noting and correcting it here.

The courts have not followed it as a rule of law, as is shown by opinions cited above. Moreover, such an interpretation of the constitutional provision (Art. 16, sec. 26) is wholly inadmissible. If it be true that a corporation can only be held responsible for a tortious homicide where death is due to the act of *"some superior officer representing it in its corporate capacity,"* then every corporation could substantially escape all punitive liability by performing its corporate acts through inferior officers or servants. Such a construction would nullify the Constitution, and is not to be entertained.

The rule deducible, it seems to us, from the Texas authorities, is that exemplary damages are not recoverable against a corporation where the grossly negligent act involves only a breach of duty by a mere servant or employee as such, unless the act was previously authorized or was subsequently approved by the corporation. But where committed by an agent who represents it in such manner and under such circumstances that under the general rules of law his acts are regarded as the acts of the corporation itself, as distinguished from the acts of a mere servant, then an action for punitive damages does lie, regardless of the question as to whether or not the agent was a corporate officer. Authorities supra; Chronister Lbr. Co. v. Williams, 116 Texas, 207.

In the instant case the jury found that the death of Russell was due to the gross negligence of Walker, and that Pettijohn was guilty of gross negligence in keeping Walker in the employment of the Company. Under the authorities we have cited, Pettijohn, in view of the position he held and the nondelegable duty he performed in employing Walker, was clearly the *alter ego* of the Company, and under the facts found by the jury as to the gross negligence of *both* Walker and Pettijohn, the plaintiff in error is liable in exemplary damages.

■ It is elementary that the negligence of a fellow servant, the status which it is claimed Walker occupied ,does not preclude a recovery by an injured employee when the master has been negligent in the selection of the incompetent or unfit servant, as was found by the jury in this case. Galveston, H. & S. A. Ry. Co. v. Farmer, 73 Texas, 85, 11 S. W., 156, and other authorities supra.

■ However, we are of the opinion that the plaintiff in error was entitled to have its common law defenses of proximate cause, sole proximate cause, fellow servant, and assumed risk presented to the jury, and that the trial court erred in not charging thereon. McDonald v. International & G. N. Ry. Co.,

86 Texas, 1, 22 S. W., 939; International & G. N. Ry. Co. v. Kuehn, 11 Texas Civ. App., 21, 31 S. W., 322; Barnes v. Honey G. N. Co., 228 S. W., 354; Hough v. Texas & Pac. Railway Co., 100 U. S., 213, 224. If the action were one for punitive damages due to *willful* acts, a different question would be presented. 39 Corpus Juris, p. 817, sec. 1029; Texas, etc. R. Co. v. Wiley, 155 S. W., 356; McDonald v. International & G. N. R. R. Co. (Civ. App), 21 S. W., 774.

■ The insistence, however, is made here that the provisions of the Workmen's Compensation Act abolished the common law defenses of contributory negligence, assumed risk, and the fellow servants rule, as heretofore applied to actions for exemplary damages. The Court of Civil Appeals so held in Magnolia Petroleum Co. v. Ford, 14 S. W. (2d) 97. We declined, however, to follow this holding. (Same case, 118 Texas, 461, 17 S. W. (2d) 36.) We overrule the contention.

The Legislature realized it could not abolish the constitutional right to recover exemplary damages for a homicide due to "gross neglect," and was particular to exempt that class of damages from the purview of the Act. R. S., Art. 8306, sec. 5. Its purpose was to leave the law as to exemplary damages the same as it was before the passage of the Compensation Act. Trinity Lumber Co. v. Ocean A. & G. Co., 228 S. W., 114.

■ The evidence as to Walker's reputation as a negligent, careless, or incompetent employee was admissible. Missouri, K. & T. Ry. Co. v. Day, 104 S. W., 237, 136 S. W., 435, 438 (par. 5); Texas & P. Ry. Co. v. Johnson, 89 Texas, 519; 18 Ruling Case Law, p. 725, sec. 201, p. 729, sec. 205, and cases cited in the notes. Besides, Pettijohn, the superintendent, knew of Walker's incompetence, and his knowledge will be imputed to the corporation. Authorities supra; 18 Ruling Case Law, p. 721, sec. 198; Missouri P. R. Co. v. Sasse, 22 S. W., 187; Texas Mexican R. Co. v. Whitmore, 58 Texas, 276; Conner v. Saunders, 9 Texas Civ. App., 56, 29 S. W., 1140; International & G. N. R. Co. v. Smith, 30 S. W., 501; Reiser v. Penn Co., 152 Pa. St., 38, 34 Am. St. Rep., 620; Smith v. St. Louis, etc., R. Co., 151 Mo., 391, 48 L. R. A., 368; Laning v. N. Y. Cent. R. Co., 49 N. Y., 521, 10 Am. Rep., 417; see also elaborate notes in 41 L. R. A., pp. 132 to 143.

■ The court's charge on exemplary damages is not a correct presentation of the law. The rule in Texas is that exemplary damages can not be recovered unless the plaintiff is

shown to have sustained actual loss or injury. There can be no recovery of exemplary damages in the absence of a recovery of actual damages. A verdict of *nominal* actual damages is not sufficient. 13 Texas Jurisprudence, pp. 240, 241, sec. 132, and cases cited in the notes. In this case actual damages are not recoverable because the plaintiff in error carried Workmen's Compensation Insurance. However, we do not believe that the Compensation Act changes the rule. We are of the opinion that in order to recover exemplary damages the plaintiff must show himself *entitled* to recover actual damages, and which he would recover but for the Compensation Act. Moreover, the rule in this State is that the amount of exemplary damages allowed must be reasonably proportioned to the actual damages found. 13 Texas Jurisprudence, p. 248, sec. 138, and cases cited in the notes. It follows from the rules stated above that in this case the jury should have been asked to find whether or not the defendants in error sustained actual damages by reason of the death of Russell, and, if so, the amount thereof.

■ The definitions of both exemplary and actual damages were clearly erroneous. The usual definition of actual damages in cases of this character should have been given—approved forms of which may be found in many cases. The one given left the jury to speculate as to what was the "pecuniary loss sustained." The definition of exemplary damages makes the recovery of such damages contingent upon the jury's believing the acts done were "wantonly or maliciously done with intent to injure the complaining party." The evidence does not raise any issue of "wantonness" or "malice," or "intent to injure the *complaining party*." The "complaining party" in this case was not the person killed, but the wife and children of the deceased. This suit is one for exemplary damages for *gross neglect* under the Constitution, and those portions of the charge just referred to obviously have no application.

For the errors previously pointed out, the judgments of the Court of Civil Appeals and the District Court are both reversed, and the cause remanded.